[No. C003732. Third Dist. Feb. 28, 1989.]

WILLBARB PETROLEUM CARRIERS, INC., Plaintiff and Respondent, v.
KENNETH CORY, as State Controller, etc., et al., Defendants and Appellants.

272

COUNSEL

John K. Van de Kamp, Attorney General, Robert F. Tyler and John D. Schell, Deputy Attorneys General, for Defendants and Appellants.

Rudick, Platt & Victor, Steven L. Victor and Norman B. Blumenthal for Plaintiff and Respondent.

OPINION

SPARKS, J.—The question in this case is whether plaintiff Willbarb Petroleum Carriers, Inc., a distributor of motor vehicle fuel, timely filed an application for a refund of a fuel tax. The issue turns on which of two procedures under the Motor Vehicle Fuel License Tax Law (Rev. & Tax. Code, § 7301 et seq.) governs the refund application in this case. The first procedure is found in the article dealing with refunds on specified sales (Rev. & Tax. Code, §§ 8101-8107), and authorizes a refund for a purchaser who later exports the fuel for use outside of California. (Rev. & Tax. Code, § 8101, subd. (b) [all further unspecified section references are to this code].) This procedure requires that a refund application be filed with the Controller "within three months after the close of the calendar month in which the fuel is exported." (§ 8105.)

The second is found in the chapter dealing with exemptions. (§§ 7401-7409.) Refunds for taxes paid on exempt transactions are governed by article 2 (commencing at § 8126). Among other things, this article authorizes the Board of Equalization to approve a refund claim if it was filed within "three years from the 25th day of the calendar month following the month for which the overpayment was made, . . ." (§ 8128, subd. (a).)

Because plaintiff was not exempt from tax but was only entitled to a refund when it exported the taxed fuel out of California, we hold that the refund application was controlled by the first procedure and that the filing deadline was consequently set by the three-month period under section 8105.

Under circumstances to be recounted, plaintiff filed a claim for refund of fuel taxes. The claim was filed more than three months after the exportation period but within the three-year period. Thus the claim was timely under section 8128 but tardy under section 8105. Defendants, the State Controller and the State Board of Equalization, appeal from a judgment holding that plaintiff is entitled to a refund of motor vehicle fuel license taxes. Defendants had denied the claim for a refund on the ground that plaintiff's claim

for a refund was not timely submitted. The trial court determined as a matter of statutory construction that plaintiff's claim was timely. On appeal, defendants contend that plaintiff's claim was untimely under the applicable statutory provisions. In response to other claims raised below by plaintiff, defendants further contend that the applicable provisions governing refunds are constitutional, that there was no negligent misrepresentation, that there is no basis for a claim of unjust enrichment and finally that the trial court's interest calculation was incorrect. We agree with defendants that plaintiff's claim for a refund was not filed in a timely manner and that there is no other legal basis for the refund. Accordingly, we shall reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The trial of this matter was conducted on the basis of stipulated facts enhanced by additional testimony. The relevant facts are not in dispute. Plaintiff is a licensed distributor of motor vehicle fuel with its principal place of business in San Diego County. In January and February of 1986, plaintiff purchased and took delivery of in excess of 42 million gallons of motor vehicle fuel from its suppliers. There is a tax imposed on the distributor of motor vehicle fuel by section 7351. The tax is imposed on only one distribution of motor vehicle fuel. (§ 7354.) It is due on the earliest nonexempt distribution, and for this purpose "distribution" is broadly defined.[1] (§ 7305.) ■■ The first distributor of the fuel is required to pay the tax, but he may indemnify himself by adding the tax to the cost of the fuel. (*People* v. *Ventura Refining Co.* (1928) 204 Cal. 286, 294 [268 P. 347].) Before tax has been paid on particular motor vehicle fuel it is referred to as "ex-tax fuel," and after the tax is paid it is called "tax-paid fuel." (See Cal. Code Regs. [formerly Cal. Admin. Code], tit. 18, § 1105.) Plaintiff's purchase of motor vehicle fuel in January and February of 1986 did not qualify for an exemption and thus plaintiff's distributors paid tax on the distribution of the fuel and added the amount of the tax to the price of the fuel sold to plaintiff. Plaintiff in turn was charged and indirectly paid the tax to its suppliers when it purchased the tax-paid fuel.

■ The purpose of the motor vehicle fuel license tax is to raise money for public highways. (*DeForest* v. *Flournoy* (1969) 272 Cal.App.2d 258, 260 [77 Cal.Rptr. 551].) Accordingly, certain uses of motor vehicle fuel which do not place a burden upon California highways are not taxed. (*Ibid.*) Among these circumstances is the exportation of the fuel for use in another state. (See §§ 7401, subd. (a)(2), 8101, subd. (b).)

---

[1] Among other things, distribution includes "[t]he receiving in this state by a licensed distributor of motor vehicle fuel with respect to which there has been no prior taxable distribution, . . . and the sale, donation, consignment for sale, barter, or use of the fuel in this state." (§ 7305, subd. (d).)

When plaintiff exports fuel to Nevada it is required to pay a motor vehicle fuel tax to that state. Plaintiff obtains receipts from Nevada which it uses to prove its entitlement to a refund of California taxes. Plaintiff exported some of its tax-paid fuel into Nevada in January and February 1986 and made timely applications for refunds of the California motor vehicle fuel tax pursuant to sections 8101 to 8107. Refunds were paid for taxes upon which timely applications were filed. As it turned out, plaintiff made computational errors in those months in its Nevada tax returns by understating the amount of fuel transported into that state. When Nevada discovered the errors and charged plaintiff additional taxes, plaintiff made an additional claim of some $37,000 for a refund of California taxes. The claim was denied because it was untimely under section 8105. Plaintiff then attempted to claim an exemption under section 7401. This claim was also denied. Plaintiff then filed this action for a refund of taxes.

■ This appeal primarily involves the question whether a distributor in plaintiff's position is limited to seeking a refund under the provisions of sections 8101 to 8107, or whether it may alternatively seek a refund through the exemption provisions of section 7401 to 7409. The trial court held that the two statutory schemes are alternative methods of claiming a refund and since plaintiff's claim was timely under the exemption provisions it is entitled to a refund. Judgment was entered in plaintiff's favor and defendants appeal.

## DISCUSSION

### I

Both sides in this case assert that the applicable statutory provisions are clear on their face, but the parties ironically divine precisely opposite meanings in this clarity. We do not perceive the statutory scheme to be "clear" in the sense that its meaning jumps out at a casual reader. The applicable statutes are part of a comprehensive scheme of taxation and they must be carefully read as part of the overall scheme of which they are part. Upon so reading the statutory provisions we are satisfied that defendants must prevail.

We have previously noted that certain transactions or uses of motor vehicle fuel are not subject to the motor vehicle license tax. Within the Motor Vehicle Fuel License Tax Law there is a chapter entitled "Exemptions." This chapter commences with section 7401, which provides in relevant part: "The provisions of this part requiring the payment of license taxes do not apply to any of the following: . . . [¶] [(a)](2) Motor vehicle fuel exported from this State by the distributor . . . ." Section 7402

provides among other things: "In support of any exemption from license taxes claimed under this chapter on account of the exportation of motor vehicle fuel, every distributor shall execute and file with the board an export certificate in such form as shall be prescribed by the board." Section 7403 provides: "All export certificates required to be filed with the board under Section 7402 shall be completed and be filed with the board within three months after the close of the calendar month in which the fuel is exported. Failure to file the certificate within the time required shall not preclude the distributor from filing a claim for refund under article 2 (commencing at § 8126) chapter 7, of this part with respect to the tax paid by the distributor on motor vehicle fuel which has been exported." Article 2 of chapter 7 (§§ 8126 to 8131) provides for a procedure for claiming refunds of overpayments from the board. Section 8128 provides in relevant part: "Except as provided in subdivision (b) no refund under this article shall be approved by the board after three years from the 25th day of the calendar month following the month for which the overpayment was made . . . ."

In contrast to these exemption provisions, ordinary refunds are governed by different statutes. Chapter 7 of the tax law is entitled "Overpayments and Refunds." Article 1 of that chapter (§§ 8101-8107), provides for refunds on certain claims. Specifically, section 8101 provides, in relevant part: "The following persons who have paid a license tax for motor vehicle fuel, either directly or to the vendor from whom it was purchased, or indirectly by the adding of the amount of the tax to the price of the fuel, shall, except as otherwise provided in this part, be reimbursed and repaid the amount of the tax: . . . [¶] (b) Any person who exports the motor vehicle fuel for use outside of this state." A person who claims a refund under this provision must present a claim to the State Controller. (§ 8102.) Section 8105 provides: "All applications for refund under Section 8101 based upon exportation of motor vehicle fuel from this State shall be filed with the Controller within three months after the close of the calendar month in which the fuel is exported. The Controller for good cause may extend for not more than six months the time for which the claim for refund may be filed on account of the exportation, provided a request therefor is filed with the Controller within or prior to the period for which the extension may be granted. All other applications for refund provided under this article, except where an extension of time has been granted, shall be filed within 13 months from the date of the purchase of the motor vehicle fuel. Any application filed after the time prescribed shall not be considered for any purpose by the Controller, the State Treasurer, or the state."

■ As applied to taxation, the word "exempt" means freedom from the burden of enforced contribution to the expenses and maintenance of government, or an immunity from a general tax; to be "exempt" is to have a

special freedom or dispensation from taxation imposed on others. (*William Clairmont, Inc.* v. *State* (N.D. 1977) 261 N.W.2d 780, 783-784.) Thus, an exemption is "freedom from a charge or burden of duty to which others are subject." (35 C.J.S., Exemption, p. 1.) It conveys the idea of being taken out from under the general rule. (*Ibid.*; see also Black's Law Dict. (5th ed. 1979) p. 513.) In a tax context an exemption means that the property exempted is not included in the computation of the amount of the tax imposed. (See § 6351.) ■ Plaintiff does not collect and pay motor vehicle fuel license taxes to the state. Instead, the distributors from whom plaintiff purchases fuel are the distributors on whom the tax is imposed. (§§ 7351, 7354.) It is those distributors who file returns and make payment of the tax to the state. Since the taxes are not directly imposed against plaintiff, it follows that there is nothing to which an "exemption" can apply.

■ The distributors against whom the tax is imposed pass the tax on to plaintiff by adding it to the price of the fuel. (See *People* v. *Ventura Refining Co., supra,* 204 Cal. at p. 294.) By adding the tax to the cost of the fuel the distributors estop themselves from claiming a refund should subsequent events disclose that the tax is not payable. (*Id.,* at p. 295.) In that event it is plaintiff, the person who indirectly paid the tax, that is entitled to any refund. (§ 8101.) ■ Sections 8101 through 8107 provide the means for a person who has actually borne the tax, directly or indirectly, to claim a refund when subsequent events render the tax inapplicable. Those refund provisions are not limited to distributors, but extend to any person who actually paid the tax. "Person" is defined broadly under the law and includes "any individual, firm, copartnership, . . . [or] corporation, . . ." (§ 7310.)

When the exemption and refund provisions of the law are viewed in the context of this statutory scheme it becomes clear that plaintiff is required to seek a refund and may not rely upon exemption provisions. This is because an exemption by its very definition can only apply to the person who is otherwise required to file a return and pay the tax. Sections 7401 through 7409 bear this out in that nowhere in those statutes is there a provision which requires the Controller to refund taxes upon the filing of a certificate of exemption. Instead, when an exemption applies the exempt fuel is not included in the tax computation and the tax is not paid in the first instance. Given this statutory scheme, the exemption provisions can apply only to the distributor upon whom fuel license taxes are imposed and to the transaction that triggers the imposition of the tax. This is not plaintiff or its distribution of the fuel. Although plaintiff is a distributor of motor vehicle fuel, it is not the distributor against whom the tax is imposed. As defendants note, an exemption from the tax cannot apply to plaintiff's distribution of motor vehicle fuel because that distribution is not a taxable event. (§§ 7351, 7354.)

Since plaintiff is not a distributor against whom the motor vehicle fuel license tax is imposed it cannot claim an exemption from that tax. When plaintiff's subsequent use of its tax-paid fuel entitles it to a refund of taxes which it indirectly paid through an addition to the purchase price then it must look to the refund provisions of the law. Those provisions required a claim for a refund to be made within three months after the close of the month in which the fuel was exported. (§ 8105.) Plaintiff did not file its claim for a refund in a timely manner. Accordingly, its application "shall not be considered for any purpose by the Controller, the State Treasurer, or the state." (§ 8105.) We conclude that the trial court erred in finding that plaintiff's claim for a refund is not barred by this provision.

## II

In the event we disagree with the trial court's interpretation of the relevant statutes, plaintiff has suggested other grounds for upholding the judgment. ■ It first asserts that section 8105 violates its equal protection rights because the statute distinguishes between two groups of taxpayers without a rational basis. Specifically, plaintiff points out that section 8105 requires claims for refunds based upon exportation to be filed within three months of the month of export, while other applications for refund may be made within 13 months of the date of purchase. (See § 8105.)

■ We are dealing with a tax measure, and in considering an equal protection argument the state is to be accorded very great latitude. (*Haman v. County of Humboldt* (1973) 8 Cal.3d 922, 925 [106 Cal.Rptr. 617, 506 P.2d 993].) ■ We perceive no denial of equal protection here. Claims for refund may be made based upon export for use outside the state, or may be based upon sale for use within the state in circumstances in which the Legislature has determined the tax should not be payable. (§ 8101.) These are essentially different events which trigger the right to a refund and the Legislature could reasonably determine that different periods of limitation should apply to them. Moreover, we note that the limitations applicable to the exporter may, in some circumstances, be more advantageous. The period for claiming a refund based upon exportation does not begin to run until the event which triggers the right has occurred. In other cases, the period runs from the date the distributor purchases the fuel and, accordingly, the right could be barred before the event which triggers it. Under the circumstances we find no denial of equal protection.

■ Plaintiff next claims that defendants are guilty of misrepresentation. It asserts that defendants are under a duty to disclose that the exemption provisions of section 7401 et seq. are meaningless. We disagree. Those provisions are not meaningless; they simply do not apply to plaintiff.

Defendants were not required to give plaintiff information about statutory exemptions which do not apply to it.

■ Plaintiff finally asserts that it should be entitled to refund to prevent unjust enrichment. We disagree. It is well established that the only remedy for recovering taxes asserted to have been incorrectly paid is to comply with statutory provisions for obtaining a refund. (*United States Steel Corp.* v. *Franchise Tax Board* (1983) 144 Cal.App.3d 473, 481 [192 Cal.Rptr. 677].) Plaintiff failed to comply with statutory provisions for claiming a refund and its claim became time-barred. We decline to hold that whenever a taxpayer's claim for a refund becomes time-barred he may reassert the claim as a cause of action for unjust enrichment.

We conclude that the trial court erred in determining that plaintiff could assert its claim for a refund in the guise of an assertion of an exemption. We have also rejected plaintiff's other claims of entitlement to a refund. Accordingly, the judgment cannot stand.

### DISPOSITION

The judgment is reversed and the cause remanded to the trial court with directions to enter judgment in favor of defendants.

Puglia, P. J., and Deegan, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied May 18, 1989.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.