[No. D019620. Fourth Dist., Div. One. Feb. 22, 1994.]

LAURA A. KUYKENDALL, Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION et al., Defendants and Appellants;
SAN DIEGO COUNTY REGIONAL JUSTICE FACILITY FINANCING
AGENCY et al., Defendants and Respondents.

[No. D020023. Fourth Dist., Div. One. Feb. 22, 1994.]

STATE BOARD OF EQUALIZATION et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
LAURA A. KUYKENDALL et al., Real Parties in Interest.

**COUNSEL**

Daniel E. Lungren, Attorney General, Timothy G. Laddish, Assistant Attorney General, Edmond B. Mamer and Ernest W. Piper, Deputy Attorneys General, for Defendants and Appellants and for Petitioners.

Milberg, Weiss, Bershad, Hynes & Lerach, William S. Lerach, Eric A. Isaacson, Alan M. Mansfield, Artie Baran, Frank J. Janecek, Jr., and Leonard B. Simon for Plaintiff and Respondent and for Real Parties in Interest.

McDougal, Love, Eckis & Grindle, Lynn R. McDougal, Tamara A. Smith and Clinton L. Blain for Defendants and Respondents and for Real Parties in Interest.

No appearance for Respondent.

## OPINION

**KREMER, P. J.**—In these consolidated matters, defendants State Board of Equalization and State of California (together Board) appeal an order preliminarily enjoining the Board to deposit into a separate interest bearing account certain tax moneys held by the Board pending further court order and not to pay out any sums as refunds or otherwise; a summary judgment favoring plaintiff Laura A. Kuykendall on portions of her amended complaint; and an order requiring the Board to transfer the moneys to the County of San Diego (San Diego) to be held in trust pending further court order. The Board also seeks mandate. We reverse the judgment and orders. We dismiss as moot the petition for mandate.

I

### INTRODUCTION

This case arises from the California Supreme Court's determination a local sales tax in San Diego was unconstitutional. In this consumer class action lawsuit, Kuykendall seeks refund of the illegally collected tax moneys. During pendency of this lawsuit, the Legislature enacted a statutory scheme for refunding such moneys. We are asked to decide whether the legislation should prevail over a conflicting refund plan ordered by the superior court. We conclude such legislation has supplanted the superior court's rulings and is not facially unconstitutional.

II

### FACTUAL AND PROCEDURAL BACKGROUND

In *Rider v. County of San Diego* (1991) 1 Cal.4th 1 [2 Cal.Rptr.2d 490, 820 P.2d 1000] (*Rider I*), the Supreme Court declared unconstitutional the

San Diego County Regional Justice Facility Financing Agency (Agency) supplemental sales and use tax (Jail Tax). The court concluded the Jail Tax was invalid because it was not approved by at least two-thirds of San Diego's voters as required under article XIII A, section 4 of the California Constitution. (1 Cal.4th at pp. 5-16.)

In *Rider* v. *County of San Diego* (1992) 11 Cal.App.4th 1410 [14 Cal.Rptr.2d 885] (*Rider II*), the appellate court reversed a Riverside County Superior Court ruling insofar as it imposed a "sales tax offset" as the method for redistributing the invalidly collected Jail Tax funds. (*Id.* at pp. 1417-1421, 1427.) The appellate court remanded the matter to the Riverside trial court to order such funds and accrued interest be deposited with and retained by the Board "pending and subject to any such administrative and/or judicial proceedings as may hereafter be undertaken with respect thereto." (*Id.* at p. 1427.)[1]

In January 1993 the Board announced a plan for refund claims to be made through San Diego retailers who had transferred Jail Tax moneys to the Board.

Later in January 1993 Kuykendall filed this consumer class action lawsuit against the Board, the Agency and retailer Discover Infiniti, Inc. (Discover), seeking direct reimbursement plus interest to consumers who effectively paid the Jail Tax.

In August 1993 by preliminary injunction the superior court ordered the Board to deposit the Jail Tax moneys into an interest-bearing escrow account. The Board appealed.

Later in August 1993 the court certified the plaintiff class for purposes of establishing a method for the Jail Tax refund. The court also granted plaintiffs' motion for summary judgment and effectively imposed a constructive trust on the Jail Tax moneys. The court ruled all consumers were "taxpayers" entitled to a full direct refund of the Jail Tax they paid and the Board was not to make any refunds without the court's prior approval of a

---

[1] In *Rider II*, *supra*, 11 Cal.App.4th 1410, the appellate court stated ". . . it is necessary that the invalidly collected tax revenues be retained as a refund account until such time as all claims for a refund of any of such revenues are finally settled (either administratively or judicially). Pending future judicial mandate to the contrary, if any, it is appropriate that these revenues be retained by the [Board]." (*Id.* at p. 1419.)

reimbursement plan. The court ordered the Board to submit a reimbursement plan for court approval.[2] The Board again appealed.

On October 8, 1993, the court entered judgment favoring Kuykendall against the Board.

On October 11, 1993, Senate Bill No. 263 (SB 263), codified at Revenue and Taxation Code[3] section 7275 et seq., became effective. (Stats. 1993, ch. 1060.) SB 263 created a statutory refund scheme for the unconstitutionally collected sales tax funds, to wit, a sales tax rollback and direct refunds for claims of $5,000 or more in documented purchases. (§§ 7276, 7277.)

On October 15, 1993, at a hearing to consider the Board's reimbursement plan, the Board asserted enactment of SB 263 rendered moot the superior court's rulings in this litigation. The court stated it did not believe its rulings were moot. The court also stated it thought SB 263 was unconstitutional under the separation of powers doctrine and violated consumers' rights to due process and equal protection. The court ordered the Board to transfer the Jail Tax funds to San Diego pending appellate review.[4] The Board again appealed and also sought mandate.

We have consolidated the Board's appeals and petition into this one case for decision.

### III

### DISCUSSION

### A

#### The Board's Appeals

The Board contends the superior court lacked jurisdiction to grant relief because plaintiffs' lawsuit assertedly did not qualify under applicable California constitutional and statutory law controlling tax refund actions.

#### 1

In June 1993 upon remand in *Rider II*, *supra*, 11 Cal.App.4th 1410, the Riverside Superior Court ordered the Agency to deposit with the Board all

---

[2]The court also dismissed Discover from the lawsuit.

[3]All statutory references are to the Revenue and Taxation Code unless otherwise specified.

[4]The superior court stayed that order to permit the Board to seek relief by extraordinary writ.

Jail Tax funds it held. In August 1993 the Riverside court's order became final and was not appealed. Later that month the Agency delivered almost $386 million to the Board. The record is silent whether the Agency subsequently transferred the earned interest to the Board.

"Under the rule of exclusive concurrent jurisdiction, 'when two superior courts have concurrent jurisdiction over the subject matter and all parties involved in litigation, the first to assume jurisdiction has exclusive and continuing jurisdiction over the subject matter and all parties involved until such time as all necessarily related matters have been resolved.' [Citations.]" *(Plant Insulation Co. v. Fibreboard Corp.* (1990) 224 Cal.App.3d 781, 786-787 [274 Cal.Rptr. 147].)  ■  Citing *Plant Insulation Co.*, the Board contends the San Diego Superior Court could not properly assume jurisdiction over the Jail Tax funds because jurisdiction assertedly remained in the Riverside court for purposes of resolving necessarily related matters. Specifically, the Board contends the Riverside court retained jurisdiction to enforce its order until the Agency fully complied by transferring to the Board all Jail Tax funds, including interest. However, the Board seeks to raise this issue for the first time on appeal without having made such contention in the superior court. Further, even if the Riverside court retained jurisdiction to enforce its order against the Agency, such continuing jurisdiction did not preclude the San Diego court from asserting jurisdiction over Kuykendall's consumer class action lawsuit seeking refunds. Kuykendall was not a party to *Rider II, supra,* 11 Cal.App.4th 1410. Moreover, the appellate court in *Rider II* stated: "This case does not call upon us to decide, and we do not decide, any issues relating to the refund proceedings which may be undertaken to recover any invalidly collected sales tax revenues . . . ." *(Id.* at p. 1420.) The court also stated nothing in its opinion precluded San Diego retail consumers from pursuing remedial reimbursement of the Jail Tax funds in another action. *(Id.* at p. 1421.)

2

Article XIII, section 32 of the California Constitution provides: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."  ■  Citing that constitutional provision, the Board contends the court erroneously permitted a tax refund action not prescribed by the Legislature.

In *Woosley v. State of California* (1992) 3 Cal.4th 758 [13 Cal.Rptr.2d 30, 838 P.2d 758], the Supreme Court stated: "The California Constitution

expressly provides that actions for tax refunds must be brought in the manner prescribed by the Legislature. Article XIII, section 32, of the California Constitution provides in this regard: 'After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, *in such manner as may be provided by the Legislature.*' (Italics added.) This constitutional limitation rests on the premise that strict legislative control over the manner in which tax refunds may be sought is necessary so that governmental entities may engage in fiscal planning based on expected tax revenues. [Citation.]" (*Id.* at p. 789; cited in *Rider II, supra,* 11 Cal.App.4th at p. 1419.) In *Woosley, supra,* the Supreme Court stated article XIII, section 32 of the State Constitution "precludes this court from expanding the methods for seeking tax refunds expressly provided by the Legislature." (3 Cal.4th at p. 792.) "The lesson of *Woosley* we take to be that statutes governing administrative tax refund procedures, backed as they are by a plenary constitutional authority, are to be strictly enforced. [Citation.]" (*Farrar* v. *Franchise Tax Bd.* (1993) 15 Cal.App.4th 10, 20-21 [18 Cal.Rptr.2d 611], fn. omitted.) "It is well established that the only remedy for recovering taxes asserted to have been incorrectly paid is to comply with statutory provisions for obtaining a refund. [Citation.]" (*Willbarb Petroleum Carriers, Inc.* v. *Cory* (1989) 208 Cal.App.3d 269, 278 [256 Cal.Rptr. 51]; accord, *Patane* v. *Kiddoo* (1985) 167 Cal.App.3d 1207, 1213-1214 [214 Cal.Rptr. 9].)

The parties acknowledge before enactment of SB 263 refund of the Jail Tax directly to consumers was not specifically authorized by statute because the "taxpayer" was the retailer and not the consumer. (*De Aryan* v. *Akers* (1939) 12 Cal.2d 781, 783 [87 P.2d 695].) Since plaintiffs were not statutory "taxpayers" with access to administrative remedies, Kuykendall contends the superior court properly exercised its jurisdiction to afford the plaintiff class a remedy. Kuykendall contends her common law class action was proper under legal and equitable principles established in *Decorative Carpets, Inc.* v. *State Board of Equalization* (1962) 58 Cal.2d 252 [23 Cal.Rptr. 589, 373 P.2d 637], and *Javor* v. *State Board of Equalization* (1974) 12 Cal.3d 790 [117 Cal.Rptr. 305, 527 P.2d 1153] (*Javor I*).[5] Kuykendall asserts since the Legislature "defined away" any right to seek a statutory refund, consumers

---

[5]Citing *Javor I, supra,* 12 Cal.3d 790, Kuykendall contends the superior court properly concluded she need not pursue a statutory refund action because the statutory procedural requirements did not apply here. In *Javor I* the Supreme Court stated: "We hold that under the unique circumstances of this case a customer, who has erroneously paid an excessive sales tax reimbursement to his retailer who has in turn paid this money to the Board, may join the Board as a party to his suit for recovery against the retailer in order to require the Board in response to the refund application from the retailers to pay the refund owed the retailers into court or provide proof to the court that the retailer had already claimed and received a refund from the Board. We think that allowing the Board to be joined as a party for these purposes in the customer's action against the retailer is an appropriate remedy entirely consonant with

may properly maintain a common law reimbursement action based on principles of restitution and constructive trust without complying with statutory conditions, specifically section 6932's requirement of exhaustion of administrative remedies and section 6904's class administrative claim requirements. Thus, according to Kuykendall, the superior court acted within its authority and fashioned an appropriate remedy by ordering the Board to refund the Jail Tax moneys to consumers.[6]

The Board concedes although Kuykendall was not a taxpayer under applicable law "she had available to her the power to bring suit in a form similar to that described and suggested in *Javor I, Javor II,*[7] *Decorative Carpets,* and *Rider II* against the retailer/taxpayers, and thereby compel retailers to pursue administrative remedies for refund of the Jail Tax."[8] However, the Board contends case law precludes the court from assuming jurisdiction on an equity basis to order the Board to issue tax refunds directly to consumers. The Board notes the Supreme Court in *Javor I* stated "to give customers a direct cause of action against the Board for all erroneously collected sales tax reimbursements which have already been paid to the Board by the retailer would neither be consonant with existing statutory procedures nor with the import of *Decorative Carpets.*" (*Javor I, supra,* 12 Cal.3d at p. 800.)

In light of the enactment of SB 263 we need not decide the extent of common law remedies, if any, previously available to Kuykendall and the plaintiff class. "In light of the fact that the class action remedy continues to be essentially equitable in nature, and given that equity will defer to statute, the common law features of class action administration are subject to legislative displacement. [Citations.]" (*Farrar* v. *Franchise Tax Bd., supra,* 15 Cal.App.4th at p. 17.) SB 263's claim process for direct refunds to consumers—along with reimbursement through a sales tax rollback—now

---

the statutory procedures providing for a customer's recovery of erroneously overpaid sales tax." (*Id.* at p. 802, fn. omitted.)

[6]Similarly, the Agency characterizes *Javor I, supra,* 12 Cal.3d 790, as recognizing that absent statutory authority a consumer has a right to restitution in a consumer class action.

[7]*Javor II* refers to *Javor* v. *State Bd. of Equalization* (1977) 73 Cal.App.3d 939 [117 Cal.Rptr. 305, 527 P.2d 1153]. In *Woosley* v. *State of California, supra,* 3 Cal.4th 758, the Supreme Court noted that before the 1987 amendment to section 6904 there was no legislative authorization for class claims for refunds of sales taxes. (*Id.* at p. 792.) The court disapproved *Javor II* to the extent it expressed views to the contrary. (*Ibid.*)

[8]Similarly, in *Connolly* v. *County of Orange* (1992) 1 Cal.4th 1105 [4 Cal.Rptr.2d 857, 824 P.2d 663] the appellate court stated: "Directly affected taxpayers and potential plaintiffs have standing to seek exemptions or refunds, and to institute litigation if their claims are denied. Other parties who can establish sufficient interest in the subject matter may intervene [citations] or participate as amicus curiae [citation] in actions which taxpayers initiate." (*Id.* at p. 1115.)

constitute the sole authorized procedures for Kuykendall to obtain refund or reimbursement of the Jail Tax.

### 3

SB 263 enacted section 7275 et seq. governing refunds of sales taxes declared unconstitutional.[9] That statutory scheme established the sole remedies for refund of the Jail Tax funds.[10] As the Board asserts, SB 263 precluded the superior court from ordering disposition of the Jail Tax funds in a manner inconsistent with its statutory provisions.[11] Thus, we conclude the superior court should have determined plaintiffs' sole remedies were under SB 263.

---

[9] Section 7275, subdivision (a), provides: "Where a tax levied in a county in conformity with Part 1.6 (commencing with Section 7251 [transaction and use tax]) has been determined to be unconstitutional in a final and nonappealable decision of a court of competent jurisdiction and the revenues derived from that unconstitutional tax are paid to the board and held in an impound account, the board shall administer refunds and reimbursements of those illegally collected taxes in accordance with the provisions of this chapter."

[10] Section 7275, subdivision (b)(1), provides: "Notwithstanding any other provision of law, on and after the effective date of the act adding this chapter [October 11, 1993], the procedures for refund or reimbursement of unconstitutional taxes contained in this chapter constitute the sole remedies for refund or reimbursement of illegal taxes as described in subdivision (a)."

Section 4(d) of SB 263 provides ". . . it is the intent of the Legislature in enacting this act, to alter the normal refund mechanism in the case where a transactions and use tax, imposed by a taxing district within a county pursuant to the Revenue and Taxation Code, has been found to be unconstitutional by a court of appellate jurisdiction, and the revenues derived from that tax have been impounded. The statutes added to the Revenue and Taxation Code by this act are intended to establish a comprehensive system of remedies that balances the right of persons who made purchases subject to the unconstitutional taxes to obtain a return of those taxes with the need of entities imposing valid taxes within the same county to obtain the revenues to which they are entitled. The provisions added by this act are intended to apply to all claims and actions for refund in the circumstances described herein, notwithstanding any other provision of law . . . ."

Section 5 of SB 263 provides: "There shall be no recovery against the State of California otherwise than as under this act in any action for refund of those illegally collected taxes."

[11] The superior court's orders conflicted with section 7275 et seq. The court required *all* claims be received and processed while SB 263 requires receipt and processing only of claims involving a single purchase or aggregate purchases of at least $5,000. (§ 7277, subd. (b)(3)(A).) The court required a new three-year statute of limitations while SB 263 provides for a one-year limitations period beginning January 1, 1994. (§ 7277, subd. (b)(3)(B).) The court ordered the Board to transfer the Jail Tax funds to San Diego for administration while SB 263 provides for transmission of the funds to the Board to administer the statutorily prescribed remedies. (§ 7275, subd. (d).) Upon completion of the refund process, under the court's order residual funds would be transferred to San Diego to build justice facilities while SB 263 provides for a tax credit to consume most of the residue with the balance to go to San Diego's general fund.

(a)

■ Citing *Mandel* v. *Myers* (1981) 29 Cal.3d 531 [174 Cal.Rptr. 841, 629 P.2d 935], Kuykendall contends the Legislature may not properly enact a law reversing or modifying a final judgment of the trial court. Kuykendall asserts applying SB 263 here would contravene the constitutional doctrine of separation of powers which "precludes the Legislature from establishing itself as a 'court of last resort' to review final court judgments on a case-by-case basis . . . ." (29 Cal.3d at p. 536.)[12] Although acknowledging the Legislature may prescribe an appropriate remedy for future violations adjudicated in future cases, Kuykendall contends the Legislature may not restrict a court's power to remedy violations already found. According to Kuykendall, reading SB 263 in the manner suggested by the Board would contravene the Constitution by effectively mandating the judiciary make specific findings about the rights of the specific parties to this lawsuit.[13] (*County of Contra Costa* v. *State of California* (1986) 177 Cal.App.3d 62, 76 [222 Cal.Rptr. 750].)[14] Kuykendall characterizes application of SB 263 to reverse the superior court judgment here as the "functional equivalent" of allowing the Legislature to reverse the court's entry of judgment favoring plaintiff class.

However, Kuykendall's reliance on *Mandel* v. *Myers, supra,* 29 Cal.3d 531, and *County of Contra Costa* v. *State of California, supra,* 177

---

[12]In *Mandel* v. *Myers, supra,* 29 Cal.3d 534, the Supreme Court faced the issue "whether the Legislature may properly disregard the finality of a court judgment and take it upon itself to readjudicate on a case-by-case basis the merits of such a judgment." (*Id.* at p. 546.) The court concluded ". . . the fundamental separation of powers doctrine embodied in article III, section 3 of the California Constitution [citation] forbids any such legislative usurpation of traditional judicial authority. Our Constitution assigns the resolution of such specific controversies to the judicial branch of government (Cal. Const., art. VI, § 1) and provides the Legislature with no authority to set itself above the judiciary by discarding the outcome or readjudicating the merits of particular judicial proceedings." (*Id.* at p. 547.) "Just as the courts may not reevaluate the wisdom or merits of statutes which have secured final passage by the Legislature, the Legislature enjoys no constitutional prerogative to disregard the authority of final court judgments resolving specific controversies within the judiciary's domain." (*Ibid.*) "[W]hile the Legislature enjoys very broad governmental power under our constitutional framework, it does not possess the authority to review or to readjudicate final court judgments on a case-by-case basis." (*Id.* at p. 549.) "[I]ndividual citizens who litigate claims against the government in our state courts are constitutionally entitled to expect that when the government loses, the Legislature will respect the final outcome of such litigation. The Legislature is not a supercourt that can pick and choose on a case-by-case basis which final judgments it will pay and which it will reject." (*Id.* at p. 552.)

[13]Section 7279.5 provides: "A copy of the provisions of this chapter may be filed by the board with the court to demonstrate that implementation of the proposed plan of reimbursement, refund, or credit in accordance with the provisions of this chapter complies with any orders of the court requiring implementation of a refund plan by [the Board]. Judicial notice of this chapter shall be taken by the court."

[14]The judiciary is to declare the parties' rights in specific controversies. (*County of Contra Costa* v. *State of California, supra,* 177 Cal.App.3d at p. 76.)

Cal.App.3d 62, is inapposite. For purposes of importing the separation of powers doctrine, the superior court judgment challenged here on appeal does not constitute a final judgment. "California law is settled that *pending* appeal a trial court judgment is not final . . . ." (*Sandoval* v. *Superior Court* (1983) 140 Cal.App.3d 932, 936 [190 Cal.Rptr. 29], italics in original; accord, *Republic Corp.* v. *Superior Court* (1984) 160 Cal.App.3d 1253, 1257 [207 Cal.Rptr. 241]; *Hardy* v. *Western Landscape Construction* (1983) 141 Cal.App.3d 1015, 1016-1017 [190 Cal.Rptr. 766]; *American Federation of Labor* v. *Employment Dev. Dept.* (1979) 88 Cal.App.3d 811, 822 [152 Cal.Rptr. 193]; *Kievlan* v. *Dahlberg Electronics, Inc.* (1978) 78 Cal.App.3d 951, 959 [144 Cal.Rptr. 585]; *Olson* v. *Hickman* (1972) 25 Cal.App.3d 920, 922 [102 Cal.Rptr. 248]; *Romero* v. *Hern* (1969) 276 Cal.App.2d 787, 791-792 [81 Cal.Rptr. 281]; Code Civ. Proc., § 1049.)[15] "If the judgment is not yet final because it is on appeal, the appellate court has a duty to apply the law as it exists when the appellate court renders its decision. [Citations.]" (*Beckman* v. *Thompson* (1992) 4 Cal.App.4th 481, 489 [6 Cal.Rptr.2d 60].) In sum, SB 263 enacted a comprehensive legislative scheme for distributing tax refunds where, as here, the tax has been declared to be unconstitutional and the revenues impounded. As this action brought by Kuykendall is on appeal and thus remains pending, SB 263 applies to her lawsuit.

(b)

■ Kuykendall also meritlessly contends applying SB 263 here would effectively preclude a remedy assertedly permitted by *Rider II*, *supra*, 11 Cal.App.4th 1410. Applying SB 263 here is not inconsistent with *Rider II*. Kuykendall mischaracterizes the import of statements in *Rider II* indicating consumers might have potential remedies through further judicial proceedings. The appellate court in *Rider II* did not designate any specific remedy as appropriate. Indeed, the court stated: "This case does not call upon us to decide, and we do not decide, any issues relating to the refund proceedings which may be undertaken to recover any invalidly collected sales tax revenues: 'The well-established rule is that we should avoid advisory opinions. [Citation.]' [Citations.] In a similar vein, we decline to decide any issues relating to the ultimate 'redistribution' of invalidly collected supplemental sales tax revenues remaining after the above referenced refund proceedings are completed, if any: Inasmuch as we cannot be sure that there will be any such remaining funds, any decision concerning the 'redistribution' of such funds would be entirely speculative and conjectural." (*Rider II*, *supra*, 11 Cal.App.4th at p. 1420.) The appellate court in *Rider II* simply

---

[15]Code of Civil Procedure section 1049 provides: "An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied."

made observations about its "purposefully restrained judicial response" to the redistribution issue by indicating what its decision did not mean. (*Id.* at p. 1421.) The court noted the fact it did not provide a direct reimbursement remedy for San Diego retail consumers did not mean those consumers were without means of seeking reimbursement of the Jail Tax revenues. (*Ibid.*) The court also noted nothing in its decision "should be deemed as an expression of opinion as to the substantive merit or proper outcome" of any other action. (*Id.* at p. 1421, fn. 4.) Further, the court specifically stated ". . . neither this court nor the trial court has unfettered discretion to 'fashion an equitable remedy on behalf of the retail consumers of San Diego County.' The supplemental sales tax revenues at issue in this case have already been collected and paid to the [Board] and, as noted in *Woosley*, the California Constitution places 'strict legislative control over the manner in which tax refunds may be sought.' [Citation.]" (*Id.* at p. 1421.)

(c)

■ Kuykendall characterizes the Legislature's enactment of SB 263 as "irrelevant to this appeal." According to Kuykendall, nothing in SB 263 suggests it should be applied "retroactively" to superior court judgments already entered. Kuykendall contends section 7275 et seq. applies only prospectively because the Legislature did not clearly state its intent about retroactivity. (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1206-1207 [246 Cal.Rptr. 629, 753 P.2d 585].) Thus, according to Kuykendall, by its express terms SB 263 provides a statutory refund remedy only for cases commenced after its adoption.[16] We disagree.

Generally "a statute will not be retroactively applied unless legislative intent to the contrary is clear. [Citations.] [¶] Although it is sometimes stated

---

[16]Section 7275, subdivision (d), provides in part: "No later than 10 days from the date the decision determining the contested tax to be unconstitutional is final and nonappealable, the court shall order the entity that levied the unconstitutional tax to pay the impounded revenues to the board which shall immediately deposit them in a segregated impound account in the Retail Sales Tax Fund." At oral argument Kuykendall characterized that statutory segment's time requirement as an express indication the Legislature intended only prospective application of SB 263. Noting *Rider I* was decided years ago, Kuykendall argued SB 263 could not apply here because the 10-day statutory period for the various procedures triggered by the final determination of unconstitutionality had long since expired. Specifically, Kuykendall asserted the Board could not comply with that time requirement and in fact was several years in default. However, any potential force Kuykendall's argument might have is undercut by the superior court's preliminary injunction ordering substantially the same procedure later mandated by the portion of section 7275, subdivision (d), cited by Kuykendall. In any event, although that statutory fragment in isolation might suggest the Legislature intended only prospective application of SB 263, when considered in its entirety together with its legislative history the statute, as we shall explain, evinces an intent it would have general effect both to the pending San Diego matter and to other future cases.

that such intent must be 'expressly declared' by the Legislature [citations], the general rule 'is not a strait-jacket. Where the Legislature has not set forth in so many words what it intended, the rule . . . should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent.' [Citation.]" (*City of Sausalito* v. *County of Marin* (1970) 12 Cal.App.3d 550, 557 [90 Cal.Rptr. 843].) "The rule that statutes are ordinarily construed to operate prospectively is based upon the presumed intent of the Legislature. [Citations.] It has no application where the Legislature manifests a contrary intent. [Citations.]" (*Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 344, 353 [139 P.2d 908].) "Although legislative enactments are generally presumed to operate prospectively and not retroactively [citations], this presumption does not defy rebuttal. We have explicitly subordinated the presumption against the retroactive application of statutes to the transcendent canon of statutory construction that the design of the Legislature be given effect. [Citation.]" (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371], fn. omitted.) Thus, our central inquiry is whether the Legislature intended SB 263 to operate retroactively. (*Ibid.*)

Manifestly, the Legislature enacted SB 263 as a curative statute to end any confusion about reimbursement of the Jail Tax funds.[17] SB 263's language clearly and unambiguously "indicates the Legislature intended a retrospective operation. [Citations.]" (*Caminetti* v. *Pac. Mutual L. Ins. Co., supra*, 22 Cal.2d at p. 353.) Review of SB 263's legislative history also discloses a legislative intent SB 263 would apply in all cases not reduced to final judgment on the statutory effective date. Thus, the superior court should have found SB 263 applied here.

Section 7275, subdivision (a), provides the Board shall administer under the statutory scheme enacted by SB 263 refunds and reimbursements of any funds collected and held by the Board under a county-levied sales tax that has been declared unconstitutional. Section 7275, subdivision (b)(1), provides after the statute's effective date the statutory procedures constitute the sole remedies for refund or reimbursement of the unconstitutional tax revenues. Further, section 7275, subdivision (b)(2), provides claims for refunds of the illegally collected taxes "that were filed prior to the effective date of the act adding this chapter that have not been paid before that date shall be processed and paid to purchasers in accordance with the provisions of this

---

[17]We note the Agency acknowledges that by enacting SB 263 the Legislature clearly indicated its intention to adopt a procedure for or reimbursement of unconstitutional or illegal taxes.

chapter, regardless of whether the purchaser or the retailer filed the claim. Nothing in the act adding this chapter shall be construed to require refiling of those previously filed claims for refund."[18] Section 7275, subdivision (d)(1), provides the moneys deposited by the Board into a segregated impound account after a final declaration of unconstitutionality shall be used to "satisfy in full all valid claims for refund filed prior to the effective date of the act adding this chapter . . . ."

In section 4(c) of SB 263 the Legislature found and declared that California appellate courts had recently declared unconstitutional transactions and use taxes imposed by certain countywide taxing districts; current law provided that only persons directly paying the tax could file claims for refunds; under those existing statutory provisions ". . . a substantial portion of the unconstitutional taxes would not be refunded to the ultimate consumers who bore the direct economic burden of paying those taxes"; thus, the Legislature intended to alter the normal refund mechanism where the tax had been declared unconstitutional and the revenues impounded; and the statutes added by SB 263 were intended to create a comprehensive system of remedies and to apply to all claims and actions under those circumstances notwithstanding any other provisions of law.

In section 5 of SB 263 the Legislature further found and declared the system of tax credits provided under that act was "the most efficient way to return revenues derived from the illegally collected taxes to the persons who bore the economic burden of those taxes." As noted, section 5 of SB 263 also provided: "There shall be no recovery against the State of California otherwise than as under this act in any action for refund of those illegally collected taxes."

Section 8 of SB 263 provided: "This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are: [¶] In order to provide as soon as possible for appropriate and adequate procedures for the refund of revenues collected pursuant to local sales or transactions and use taxes that have been determined to be unconstitutional, it is necessary that this act take effect immediately."

The analyses of SB 263 prepared for legislative committees specifically referred to the San Diego tax declared unconstitutional in *Rider I, supra,* 1 Cal.4th 1. (Assem. Ways & Means Com., Analysis of Sen. Bill No. 263

---

[18]At Kuykendall's request we have judicially noticed the Board's denial of her administrative claim for tax refund.

(1993-1994 Reg. Sess.) as amended Aug. 23, 1993; Sen. Rules Com., Analysis of Sen. Bill No. 263 (1993-1994 Reg. Sess.) as amended Apr. 19, 1993; Sen. Appropriations Com., Analysis of Sen. Bill No. 263 (1993-1994 Reg. Sess.) as amended Apr. 19, 1993; Sen. Com. on Rev. and Tax., Analysis of Sen. Bill No. 263 (1993-1994 Reg. Sess.) as introduced.) The analyses also specifically referred to the sales tax rollback in San Diego. (Sen. Rules Com., Analysis of Sen. Bill No. 263, *supra*, as amended Apr. 19, 1993; Sen. Appropriations Com., Analysis of Sen. Bill No. 263, *supra*, as amended Apr. 19, 1993; Sen. Com. on Rev. and Tax., Analysis of Sen. Bill No. 263, *supra*, as introduced.)[19]

In sum, SB 263's language and legislative history clearly indicate the statute was intended to apply to pending cases.[20]

### (d)

■ Kuykendall contends even if the Legislature intended SB 263 to apply "retroactively" to this case, its application here would violate the plaintiff class's federal and state constitutional rights to due process and equal protection.[21] The Agency also contends we must examine the asserted facial invalidity of SB 263's provisions to the extent the statute affects the

---

[19]SB 263 was introduced in February 1993 shortly after commencement of this lawsuit. A legislative analysis noted a lawsuit in San Diego "was the impetus for this bill" but the bill would also apply "to any invalidly-collected local sales tax." (Sen. Com. on Rev. and Tax., Analysis of Sen. Bill No. 263, *supra*, as introduced.)

[20]We also note the rule a statute should be construed as not operating retroactively absent a clear legislative direction does not apply where, as here, the statute is remedial or procedural in nature. (*Pacific Coast Medical Enterprises* v. *Department of Benefit Payments* (1983) 140 Cal.App.3d 197, 204-205 [189 Cal.Rptr. 558].) "A statute which is procedural in nature may be given effect as to pending and future litigation even if the event underlying the cause of action occurred before the statute took effect. [Citations.]" (*Pacific Coast Medical Enterprises* v. *Department of Benefit Payments*, *supra*, at pp. 204-205.) "A statute is procedural when it neither creates a new cause of action nor deprives defendant of any defense on the merits. [Citation.] An amendment of a procedural statute applies to cases pending at the time of its enactment, providing vested rights are not affected. [Citations.]" (*Strauch* v. *Superior Court* (1980) 107 Cal.App.3d 45, 49 [165 Cal.Rptr. 552].) SB 263 at most "merely provided a new remedy for the enforcement of existing rights and was procedural in nature. [Citation.]" (Cf. *Pacific Coast Medical Enterprises* v. *Department of Benefit Payments*, *supra*, at p. 205.) "[P]arties do not have vested rights in existing remedies and rules of procedure. [Citation.]" (*Hardy* v. *Western Landscape Construction*, *supra*, 141 Cal.App.3d at p. 1018.) Kuykendall had no vested right to any former remedy.

[21]*In re Marriage of Buol* (1985) 39 Cal.3d 751 [218 Cal.Rptr. 31, 705 P.2d 354], the Supreme Court stated legislative intent was "only one prerequisite to retroactive application of a statute. Having identified such intent, it remains for us to determine whether retroactivity is barred by constitutional constraints. We have long held that the retrospective application of a statute may be unconstitutional if it is an ex post facto law, if it deprives a person of a vested right without due process of law, or if it impairs the obligation of a contract. [Citations.]" (*Id.* at p. 756.)

superior court judgment. The Board contends the issue of SB 263's constitutionality was not properly before the superior court and is not ripe for appeal. Kuykendall responds the issues of SB 263's applicability and constitutionality were presented to the superior court when the Board argued the statute mooted the entry of summary judgment. We conclude the superior court effectively declined to apply SB 263 because it believed the statute to be unconstitutional.[22] We thus proceed to consider the issue and determine SB 263 is not unconstitutional on its face.

Kuykendall contends plaintiffs were unlawfully deprived of their property and SB 263 authorizes additional withholding of such property with denial of refunds to most injured consumers, to wit, those unable to prove $5,000 in purchases. Thus, according to Kuykendall, the Board's plan constitutes "a continuing deprivation of property without due process of law." Kuykendall also contends SB 263's statutory scheme (e.g., § 7277, subd. (b)(3)(A))[23] denies equal protection by arbitrarily favoring the wealthy and large businesses likely to maintain actual receipts and providing minimal, if any, remedy to the lower and middle classes. Kuykendall asserts SB 263's requirement of actual receipts unjustly deprives consumers of refunds and is unlawfully discriminatory. According to Kuykendall, a sales tax rollback is an inadequate substitute for a refund with interest to every citizen who demonstrates entitlement to a refund and also violates equal protection by permitting double recovery by business and the wealthy.[24] Kuykendall further contends conveying refund benefits to some citizens but not others violates constitutional guarantees of equal protection.[25]

---

[22]Responding to the Board's argument SB 263 provided plaintiffs' sole applicable remedy, the superior court stated: "I think you might agree that insofar as the legislation directs this court to do certain things in this particular case, the issue is as to whether or not this court is required to obey the mandates of the Legislature which it imposes on this court in this case or whether those mandates are, in fact, a violation of our separation of powers doctrine. [¶] The legislation was specifically amended after this court rendered its decision on summary judgments, afterwards." The court also stated: "The bill would only allow a taxpayer to secure a refund if they [sic] can demonstrate $5,000 or more in a single purchase or several purchases put together had to be $5,000, or they could not get a refund. . . . And I happen to think it's unconstitutional to suggest that you have to have a minimum amount before you are entitled to a refund. That's number one. [¶] Number two, there is the question of equality in that the people who are able to demonstrate $5,000 or more in purchases will not only get the benefit of the refund, but get the benefit of the rollback as well."

[23]Section 7277, subdivision (b)(3)(A), provides: "Only a claim for refund made with respect to a single purchase or aggregate purchases of five thousand dollars ($5,000) or more shall be eligible for refund pursuant to this section."

[24]Similarly, the Agency contends SB 263 permits an unconstitutional double recovery of tax paid in violation of equal protection guarantees.

[25]Kuykendall also asserts by permitting only those consumers who can document $5,000 in purchases to seek a refund of the Jail Tax money, SB 263 violates California Constitution, article XIII, section 32's mandate that an action for reimbursement "may be maintained."

"At the outset we must recognize that since we are dealing with a tax measure the state is to be accorded very great latitude. [Citations.] Flexibility and variety of tax schemes are appropriate [citations], and the state may permissibly distinguish in favor of a given class [citations]. Tax statutes are generally not subjected to close scrutiny, and distinctions can be justified on the basis of administrative convenience and promotion of legitimate state interests. [Citation.]" (*Haman v. County of Humboldt* (1973) 8 Cal.3d 922, 925-926 [106 Cal.Rptr. 617, 506 P.2d 993]; *Willbarb Petroleum Carriers, Inc. v. Cory, supra*, 208 Cal.App.3d at p. 277.) "The distinction between classes drawn by a tax statute 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.' [Citation.]" (*Haman v. County of Humboldt, supra*, at pp. 926-927.) "A legislative scheme which is reasonably structured to accomplish a recognized and proper governmental objective is not rendered unreasonable or unconstitutional simply because the objective might have been achieved in some other or even more efficient manner. [Citation.]" (*Allyn v. Allison* (1973) 34 Cal.App.3d 448, 452 [110 Cal.Rptr. 77].)

SB 263 provides for reimbursement of the collected Jail Tax funds through a sales tax rollback (§ 7276) and direct refunds for claims of $5,000 or more in documented purchases (§ 7277).[26] The primary means of reimbursement was through the rollback. Under section 5 of SB 263, the Legislature expressly found and declared "that the system of tax credits provided by this act is adopted by the Legislature as the most efficient way to return revenues derived from the illegally collected taxes to the persons who bore the economic burden of those taxes." Such finding was well within legislative discretion. Indeed, a legislative committee analysis noted the lack of any easy or equitable way to return the Jail Tax funds: "Any refund or rate reduction scheme is bound to have an element of rough justice, since an elaborately designed method to ensure that each taxpayer receives the same amount he or she paid would entail substantial administrative costs." (Sen. Com. on Rev. and Tax., Analysis of Sen. Bill No. 263, *supra*, as introduced.) Further, plaintiffs did not have any vested right to direct refunds for claims

---

[26]The Legislative Counsel's Digest of SB 263, Statutes 1993, chapter 1060, stated: "This bill would require, whenever a local sales or transactions and use tax is finally determined to be invalid for failure to comply with . . . constitutional requirements, that a portion of the revenues collected under that tax be credited to taxpayers located in the jurisdiction in which that tax was imposed. . . . [¶] This bill would also provide that, for purposes of refunding those revenues not credited to taxpayers, a purchaser may file a claim for refund with the State Board of Equalization in accordance with specified requirements and procedures."

under $5,000. (Cf. *People* v. *Union Oil Co.* (1957) 48 Cal.2d 476, 481 [310 P.2d 409].)[27]

In sum, any refund scheme would likely be vulnerable to criticism because of potential inequities resulting from various consumers' not retaining adequate records documenting their expenditures. Further, since a consumer with under $5,000 in purchases would be entitled to a return of less than $25, the administrative costs associated with the court-ordered scheme of direct refunds to all consumers would likely neutralize a substantial portion of the scheme's asserted benefits. Thus, given the great latitude accorded the Legislature in tax matters, we conclude the statutory $5,000 threshold requirement for refunds is not impermissible. Similarly within legislative discretion is SB 263's sales tax rollback, an equitable feature absent from the court-ordered scheme. The probable effect of the rollback will be reimbursement of most consumers who paid the unconstitutional tax. Finally, the Legislature reasonably provided for payment to San Diego's general fund of the residual funds remaining after the rollback and refunds. In contrast, implementing the superior court order directing transfer of the residue to San Diego to build justice facilities would effectively undercut the Supreme Court's decision in *Rider I*, *supra*, 1 Cal.4th 1, which held collecting the sales tax for that precise purpose was unconstitutional.

Accordingly, we conclude SB 263 is not facially unconstitutional.

4

The Agency and the Board entered into a contract for the Board to collect the Jail Tax on the Agency's behalf. The agreement provided upon entry of final judgment invalidating the tax and requiring a rebate or refund to the taxpayers, the Agency would pay the Board's costs of administering refunds and transmit to the Board the amount of any taxes and interest the Board was required to rebate or refund to taxpayers. According to the Agency, the agreement did not require it to transmit any revenues that the Board was not required to rebate or refund, to wit, the amounts for which no valid claims were filed. ■ Thus, the Agency contends in granting summary judgment on its cross-complaint involving its contractual agreement with the Board, the superior court properly ruled the Agency was contractually entitled to those portions of the Jail Tax revenues not subject to a valid refund claim or

[27] " 'The general relationship of sovereign and taxpayer is not founded on nor does it create any contractual rights. . . . A right to a credit or refund of taxes is purely statutory . . . . The legislature may withdraw such a statutory right or remedy, and a repeal of such a statute without a saving clause will terminate all pending actions based thereon.' [Citation.]" (*People* v. *Union Oil Co., supra*, 48 Cal.2d at p. 481.) "[U]nder this reasoning there is no vested right to the refund of the taxes but rather such action is a matter of legislative grace . . . ." (*Ibid.*)

payable to offset the Board's administrative expenses. Citing *Caminetti* v. *Pac. Mutual L. Ins. Co., supra*, 22 Cal.2d 344, the Agency characterizes as impermissible legislative interference and an unconstitutional impairment of its assertedly vested rights under the summary judgment and its contract with the Board any attempt under SB 263 to distribute by a rollback the residue of the Jail Tax money remaining after direct refunds. (U.S. Const., art. I, § 10.)[28] However, as noted, SB 263 can properly apply here because the judgment is before us on appeal and thus not final. (See, e.g., *Beckman* v. *Thompson, supra*, 4 Cal.App.4th at p. 489; *Sandoval* v. *Superior Court, supra*, 140 Cal.App.3d at p. 936; Code Civ. Proc., § 1049.) Further, we decline to characterize as "vested" any asserted rights under a contract involving collection of an unconstitutional tax.[29]

5

The Board contends the court erred in granting the preliminary injunction because Kuykendall did not meet the requirements of Code of Civil Procedure section 526. Specifically, the Board asserts the court should have concluded the motion for preliminary injunction was wholly lacking in evidentiary support. Kuykendall replies the summary judgment and attendant orders replaced the preliminary injunction and rendered moot the issue of its propriety. Under the circumstances here, we need not separately discuss the propriety of the preliminary injunction. The judgment has subsumed the preliminary injunction and SB 263 requires reversal of the judgment.[30]

---

[28]"Ordinarily the judgment of a court may not be modified or altered by legislative action [citations] because a judgment is a form of contract protected by the contract and due process clauses of the state and federal Constitutions. [Citations.]" (*Caminetti* v. *Pac. Mutual L. Ins. Co., supra*, 22 Cal.2d at p. 363.)

[29]We also note section 1 of SB 263 repealed the San Diego County Regional Justice Facility Financing Act (Gov. Code, § 26250 et seq.) which created the Agency.

[30]Discover contends enactment of SB 263 providing for direct refund of the Jail Tax money to consumers was beyond the constitutional power of the Legislature. Specifically, Discover asserts since the consumers were not taxpayers, the direct refunds to consumers under section 7277 constituted improper gifts of public money, violating article XVI, section 6 of the California Constitution. Citing *Golden Gate Bridge etc. Dist.* v. *Luehring* (1970) 4 Cal.App.3d 204, 214 [84 Cal.Rptr. 291], Discover also asserts the Legislature may not take money from one group of people (retailers) and pay it to another group (consumers). Discover characterizes as a facially unconstitutional taking of property SB 263's authorizing direct reimbursement of Jail Tax moneys to consumers who did not pay the tax. However, at the same time, Discover asserts we should "confirm the lower court's ruling the consumer is the taxpayer." We decline to reach Discover's contentions of constitutional violation because, as acknowledged by Discover, they were not raised in the superior court.

## B

*The Board's Petition for Mandate*

The Board seeks mandate directing the superior court to vacate its judgment and orders and to enter a new order either directing the Board to comply with SB 263 or dismissing the case with prejudice. Alternatively, the Board seeks a writ ordering that implementation of SB 263 proceed immediately pending final resolution of this case. However, in light of our decision reversing the superior court judgment and orders, the Board's petition for writ of mandate is moot.

### DISPOSITION

The judgment and orders are reversed. The petition for mandate is dismissed as moot. The Board shall have costs on appeal from Kuykendall.

Benke, J., and Nares, J., concurred.

The petition of respondent Laura A. Kuykendall for review by the Supreme Court was denied May 12, 1994.