65 Cal.Rptr.3d 716 (2007)
155 Cal.App.4th 65
Angel BATT, Plaintiff and Appellant,
v.
CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent.
No. A114633.
Court of Appeal of California, First District, Division Two.
September 12, 2007.
*718 Paul G. Kerkorian, Fresno; Berding & Weil, Daniel L. Rottinghaus and Steven Weinmann, Alamo, for Plaintiff and Appellant.
Dennis J. Herrera, City Attorney; Julie Van Nostern, Chief Tax Attorney; Peter J. Keith, Deputy City Attorney, for Defendant and Respondent.
*717 RICHMAN, J.
Plaintiff Angel Batt appeals from the order sustaining a general demurrer to those portions of her complaint that purported to state class action claims for refund of a San Francisco tax plaintiff alleged was erroneously collected from a class she proposed to represent. The trial court sustained the demurrer on the ground that San Francisco law does not allow class action suits to recover taxes. We hold that this conclusion was correct, and we affirm.

BACKGROUND
On January 20, 2006, plaintiff filed her complaint for herself "individually and on behalf of all persons similarly situated, and as a taxpayer representative." She alleged as follows:
The City and County of San Francisco (the City) has enacted a tax on transient occupancy of hotel rooms (the Hotel Tax) of 14 percent; it is assessed on the rental of a "guest room," which is defined as "A room occupied, or intended, arranged, or designed for occupation by one or more occupants." The Hotel Tax is collected by the hotel and remitted to the City.[1]
In December 2003, the City's treasurer and tax collector promulgated a number of "Hotel Tax Guidelines" (the Guidelines) advising hotel operators that the Hotel Tax applied to a number of charges, one of which was "Charges for parking (including valet services) for hotel guests" including "(i) charges to hotel guests for parking located on the hotel premises regardless how charged, and (ii) charges to hotel guests for parking located off the hotel premises where such charge is added to the room bill and paid to the hotel operator." [2]
Plaintiff alleged that "imposition of the Hotel Tax on Parking Charges is unlawful and in violation of the [Hotel Tax] Ordinance. The Ordinance only authorizes the imposition of the Hotel Tax `on the rent for every occupancy of a guest room in a hotel,' whereas the Guidelines purport to extend the Hotel Tax to the Parking *719 Charges. Parking Charges, however, are not `rent for ... occupancy of a guest room', and the imposition of the Hotel Tax on such charges contravenes the Ordinance and is unlawful."
Plaintiff further alleged that she is a resident of San Mateo County, and that on August 6-7, 2005, she stayed at the Ritz-Carlton Hotel in San Francisco, where she was charged $55 for parking her automobile, $7.70 of which was the 14 percent assessment pursuant to the Hotel Tax. Plaintiff alleged that the City "impose[s] and collect[s] in the same manner as described above this same unlawful tax payment on Parking Charges at each and every hotel in the City ... that provides parking for hotel guests."
Plaintiff then alleged that she "brings this action on her own behalf and on behalf of all persons similarly situated as either or both a class representative under Code of Civil Procedure section 382, or as a taxpayer representative under Code of Civil Procedure section 526a," and claimed to represent a class "composed of all persons who paid a `Hotel Tax' on their hotel parking charge[s] ... since January 20, 2002." This was followed by the standard class action allegations: that "there is a well-defined community of interest in the questions of law and fact" typified by her claim, that the class could be identified "from the records of the hoteliers," and that plaintiff would be "a representative party who will fully and adequately protect the interests of the Class members."
Finally, plaintiff alleged that on October 15, 2005 she filed separate refund claims with the City, for herself and for "all others similarly situated," pursuant to the Government Claims Act (Gov.Code, § 810 et seq. (Claims Act)); that those claims were deemed rejected by operation of law 45 days later (id., § 912.4, subd. (c)); that on January 11, 2006 (i.e., nine days before filing her complaint), plaintiff unsuccessfully demanded that the City "cease imposing the Hotel Tax upon Parking Charges"; and that she "expects to regularly return to the City ... in the future and to stay at hotels in San Francisco that impose Parking Charges," and thus "will be required to pay the Hotel Tax on such Parking Charges."
Based on the foregoing allegations, plaintiff set forth six causes of action, for: (1) declaratory relief that assessment of the Hotel Tax on parking charges pursuant to the Guidelines was illegal; (2) injunctive relief prohibiting the City from collecting "the Hotel Tax based upon a percentage of Parking Charges charged by the hotels"; (3) imposition of a constructive trust for monies improperly charged and "overpaid"; (4) an accounting for such sums; (5) refund of sums pursuant to the relevant provision of the City's municipal code (S.F. Bus. & Tax Regs.Code, § 6.15-1); and (6) a common count for money had and received.
The City responded with a general demurrer based upon several grounds, one of which is particularly germane to the issue before usthat "with regard to unnamed putative class member plaintiffs, class action claims for a Hotel Tax refund are forbidden by law." In its supporting points and authorities, the City maintained that a class action claim for refund of municipal taxes is not permitted unless specifically authorized by local law, that the City had adopted an ordinance specifically disallowing the class action remedy, and thus the sole available remedy was a refund action by each person allegedly overcharged. However, the City conceded that plaintiff had a valid and judicially-ripe claim for a personal refund.
After conducting a brief hearing, the trial court sustained the City's demurrer without leave to amend "as to all causes of *720 action brought by Unnamed Plaintiffs." The City was ordered to answer "the causes of action brought by Plaintiff Angel Batt."
Plaintiff filed a timely notice of appeal.[3]

DISCUSSION

The Standard Of Review
We set forth the applicable rules of review in Flying Dutchman Park, Inc. v. City and County of San Francisco (2001) 93 Cal.App.4th 1129, 1134-1135, 113 Cal.Rptr.2d 690 (Flying Dutchman): "`A demurrer tests the legal sufficiency of the complaint....' [Citations.] On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. [Citations.] When the trial court sustains a demurrer without leave to amend, we must also consider whether the complaint might state a cause of action if a defect could reasonably be cured by amendment. If the defect can be cured, then the judgment of dismissal must be reversed to allow the plaintiff an opportunity to do so. The plaintiff bears the burden of demonstrating a reasonable possibility to cure any defect by amendment. [Citations.]"
We conclude, as did the trial court, that the complaint does not state a claim, and cannot be amended to do so.

The General Rules And General Policy Regarding Taxpayer's Claims
As we indicated in Flying Dutchman, supra, 93 Cal.App.4th 1129, 1135-1136, 113 Cal.Rptr.2d 690, money is the lifeblood of modern government. Money comes primarily from taxes, and, as the importance of a predictable income stream from taxes has grown, governments at all levels have established procedures to minimize disruptions, primary among which is the condition precedent that a tax may be challenged only after it has been paid. Stated otherwise, preemptive, precollection, or prepayment lawsuits are, with a few exceptions not present here,[4] not permitted. This principle is generally known as the "pay first, litigate later" rule, and it applies at all levels of governmentthe federal (26 USC §§ 7421, subd. (a), 7422, subd. (a); 28 U.S.C. §§ 1346, subd. (a)(1), 2201, subd. (a); Flora v. United States (1958) 357 U.S. 63, 67-75, 78 S.Ct. 1079, 2 L.Ed.2d 1165; Cheatham et al. v. United States (1875) 92 U.S. 85, 88-89, 23 L.Ed. 561); the state (Cal. Const., art. XIII, § 32; Rev. & Tax.Code, §§ 6931 [sales and use taxes], 19381, 19382 [franchise and income taxes]; State Bd. of Equalization v. Superior Court (1985) 39 Cal.3d 633, 638, *721 217 Cal.Rptr. 238, 703 P.2d 1131); and the local (Rev. & Tax.Code, §§ 4807, 5140 [property taxes]; S.F. Bus. & Tax Regs. Code, § 6.15-4, subd. (a) [persons challenging tax "must first pay the amount of the disputed tax ... prior to seeking judicial relief']; Flying Dutchman, supra, at p. 1136-1138, 113 Cal.Rptr.2d 690; Writers Guild of America, West, Inc. v. City of Los Angeles (2000) 77 Cal.App.4th 475, 483, 91 Cal.Rptr.2d 603).
Certainly, taxation amounts to a taking of property that cannot be accomplished without due process. But due process "`does not guarantee the right to judicial review of tax liability before payment' " (Aronoff v. Franchise Tax Board (1963) 60 Cal.2d 177, 179, 32 Cal.Rptr. 1, 383 P.2d 409, quoting Modern Barber Col., Inc. v. Cal. Emp. Stab. Com. (1948) 31 Cal.2d 720, 725-726, 192 P.2d 916); rather, it requires only that government provide a procedure which, at some point, provides the taxpayer a meaningful opportunity to contest the legality of the exaction. (E.g., McKesson Corp. v. Florida Alcohol & Tobacco Div. (1990) 496 U.S. 18, 31, 36-37, 39,110 S.Ct. 2238,110 L.Ed.2d 17; Dupuy v. Superior Court (1975) 15 Cal.3d 410, 416,124 Cal.Rptr. 900, 541 P.2d 540.)
The rule against challenging the collection of a taxusually in the equitable forms of injunctive or declaratory relief is predicated on the existence of a procedure that provides the taxpayer with an adequate remedy at law to challenge the legality of a tax by seeking a refund of taxes already paid. (E.g., 28 U.S.C. § 1341 [prohibiting federal courts from enjoining collection of any state tax "where a plain, speedy and efficient remedy may be had in the courts of such State"]; McKesson Corp. v. Florida Alcohol & Tobacco Div., supra, 496 U.S. 18, 51, 110 S.Ct. 2238; Atchison Ry. Co. v. O'Connor (1912) 223 U.S. 280, 285, 32 S.Ct. 216, 56 L.Ed. 436 ["it is reasonable that a man who denies the legality of a tax should have a clear and certain remedy. The rule being established that, apart from special circumstances, he cannot interfere ... with the State's collection of its revenues, an action at law to recover back what he has paid is the alternative left." (Holmes, J.)].)
Whether the state chooses to make its remedy available prior to collection of the tax, or condition availability of the remedy upon payment of the taxes, is a matter left to the state's discretion. "[T]he States are afforded great flexibility in satisfying the requirements of due process in the field of taxation. As long as state law provides a `"clear and certain remedy,"' [citations], the States may determine whether to provide predeprivation process (e.g., an injunction) or instead to afford postdeprivation relief (e.g., a refund)....." (National Private Truck Council, Inc. v. Oklahoma Tax Comm'n (1995) 515 U.S. 582, 587, 115 S.Ct. 2351, 132 L.Ed.2d 509.) "`The power of a state to provide the remedy of suit to recover alleged overpayments as the exclusive means of judicial review of tax proceedings has long been unquestioned.'" (Aronoff v. Franchise Tax Board, supra, 60 Cal.2d 177, 179, 32 Cal.Rptr. 1, 383 P.2d 409, quoting Modern Barber Col., Inc. v. Cal. Emp. Stab. Com., supra, 31 Cal.2d 720, 726, 192 P.2d 916; accord, Flying Dutchman, supra, 93 Cal.App.4th 1129,1135, 113 Cal.Rptr.2d 690; Writers Guild of America, West, Inc. v. City of Los Angeles, supra, 77 Cal.App.4th 475, 481, 91 Cal. Rptr.2d 603.)
State statutes and local government regulations commonly require that a judicial action for refund cannot be commenced unless the taxpayer has completed an administrative process to recover taxes claimed to have been erroneously assessed *722 or collected. And if there is such a process, the courts require strict compliance with it and exhaustion of the administrative remedy before judicial action may be started. (E.g., IBM Personal Pension Plan v. City and County of San Francisco (2005) 131 Cal.App.4th 1291, 1299, 32 Cal. Rptr.3d 656; Neecke v. City of Mill Valley (1995) 39 Cal.App.4th 946, 961, 46 Cal. Rptr.2d 266 (Neecke); Shiseido Cosmetics (America) Ltd. v. Franchise Tax Bd. (1991) 235 Cal.App.3d 478, 486-489, 286 Cal.Rptr. 690.) A corollary to the strict compliance principle is that courts are without authority to relax statutory procedures for tax refunds. (E.g., McCabe v. Snyder (1999) 75 Cal.App.4th 337, 344-345, 89 Cal.Rptr.2d 315; Kuykendall v. State Bd. of Equalization (1994) 22 Cal.App.4th 1194, 1203, 27 Cal.Rptr.2d 783 (Kuykendall); Farrar v. Franchise Tax Bd. (1993) 15 Cal.App.4th 10, 19, 18 Cal.Rptr.2d 611 (Farrar).)
Against this background, we turn to plaintiffs arguments seeking reversal of the order.

No Class Action Is Allowed
We begin with discussion of Woosley v. State of California (1992) 3 Cal.4th 758, 13 Cal.Rptr.2d 30, 838 P.2d 758 (Woosley), a case cited by the trial court and discussed at length by the parties. Woosley was a class action challenging the practices of the Department of Motor Vehicles and the State Board of Equalization which charged annual vehicle license fees and use taxes on passenger vehicles originally sold outside the state that were higher than the fees and taxes charged on similar vehicles first sold within the state. The trial court ruled for Woosley all the way, both in his individual capacity and as representative of the class; the Court of Appeal essentially affirmed (except as to an award of attorney fees). The Supreme Court affirmed in part and reversed in part on the merits. But as pertinent to the issue here, the court concluded that the "class claim filed by Woosley was not authorized by statute." (Id. at p. 788, 13 Cal.Rptr.2d 30, 838 P.2d 758.)
Woosley has been cited and discussed in numerous cases in its 15-year existence, including by this court, in Neecke, supra, 39 Cal.App.4th 946, 46 Cal.Rptr.2d 266, and other courts in Kuykendall and Farrar. And all the cases have interpreted it in a way devastating to plaintiffs position here.
Howard Jarvis Taxpayers Assn. v. City of Los Angeles (2000) 79 Cal. App.4th 242, 93 Cal.Rptr.2d 742 (Howard Jarvis) is illustrative. This was a lawsuit by a taxpayer association challenging the Los Angeles ordinance that extended the city's business tax and created an annual registration fee for persons engaged in occupations in their homes. (Id. at pp. 244-245, 93 Cal.Rptr.2d 742.) The trial court granted summary judgment for the city on two separate grounds, one of which is pertinent here, that persons seeking a refund of taxes must file individual administrative claims. The Court of Appeal affirmed, and its conclusion was succinct: "As to the individuals who paid the registration fee and taxes and on whose behalf the Association seeks a refund, the .Association is precluded from pursuing such a refund by the failure to file the requisite administrative refund claim.... [¶] As discussed in Woosley ... and Thomas v. City of East Palo Alto (1997) 53 Cal.App.4th 1084, 1095[, 62 Cal.Rptr.2d 185], class-action-type lawsuits seeking a refund of fees and taxes are barred unless each plaintiff has first filed an administrative refund claim with the City. And, in non-class-action litigation, as here, the court lacks jurisdiction to order refunds to taxpayers who failed to file claims. [Citation.] It is *723 well settled that `a judgment may not be entered either for or against one who is not a party to an action or proceeding. [Citations.]' [Citation.]" (Id. at p. 249, 79 Cal.App.4th 242, 93 Cal.Rptr.2d 742.)
Plaintiff accurately summarizes the holding of Woosley, as "if there is a pre-lawsuit claims-filing procedure for the refund of a tax, and that pre-lawsuit claims-filing procedure does not authorize class claims, then class claims (and therefore class actions) for the refund of that tax are not allowed." Despite that, plaintiffs opening argument is that Woosley "does not categorically preclude class actions for all tax refunds," and asserts that "Woosley is inapposite because there is no pre-lawsuit claim filing requirement" in either the Claims Act or the San Francisco Municipal Code "for the refund causes of action." And, so the argument runs, "if a pre-lawsuit claim was [sic] required," it would be governed by the Claims Act which, as construed in City of San Jose v. Superior Court (1974) 12 Cal.3d 447, 115 Cal.Rptr. 797, 525 P.2d 701 (City of San Jose), "permits the filing of class claims." Plaintiff is simply wrongand City of San Jose, on which plaintiff heavily relies, does not assist her.
City of San Jose, cited four times in plaintiffs opening brief and seven times in her reply, involved a large number of owners of property located in the flight pattern of a municipal airport who sought damages for nuisance and inverse condemnation. The Court of Appeal issued a writ of mandamus directing the trial court to vacate its order certifying the action as a class action and ordering dismissal of class action aspect of the case. Doing so, however, the court discussed Government Code section 910 and Code of Civil Procedure section 382, and observed that "It is therefore clear a class claim may satisfy the claims statutes requirements. Thus, we conclude these statutes do not prohibit class actions against governmental entities for inverse condemnation and nuisance." (City of San Jose, supra, 12 Cal.3d 447, 457, 115 Cal.Rptr. 797, 525 P.2d 701.) It is apparently this language on which plaintiff relies. It is not availing.
Like plaintiff here, plaintiff Woosley relied heavily on City of San Jose, supra, 12 Cal.3d 447, 115 Cal.Rptr. 797, 525 P.2d 701, arguing that the Supreme Court there accepted an administrative claim for damages by the named plaintiffs in accordance with the Claims Act as sufficient to commence a class action against the municipality; Woosley also argued that City of San Jose had been extended by a number of Courts of Appeal "to permit the filing of class claims seeking tax refunds." (Woosley, supra, 3 Cal.4th 758, 788, 13 Cal. Rptr.2d 30, 838 P.2d 758.) The issue in Woosley was whether City of San Jose and its progeny would be extended to the class claims in issue there. The answer was a resounding "No." Writing for a unanimous court, Justice George disapproved all the cases expansively applying City of San Jose, and point blank held that "City of San Jose ... should not be extended to include [class] claims for tax refunds." (Id. at pp. 788-789, 13 Cal.Rptr.2d 30, 838 P.2d 758.)
At the argument below, plaintiffs counsel argued that Woosley "narrowly applied." Plaintiff continues such argument here, especially in the reply brief, which contains seven pages replete with observations that any "expansive reading of Woosley" is incorrect; that Woosley must be limited to the "facts" presented; and that it was not based on "`general policy grounds applicable to all taxes.'" Such observations conclude with the statement that all of the cases expressly disapproved in Woosley involved "state taxes, not local taxes." We could not disagree more, as *724 we made clearor at least believed we made clear12 years ago, in Neecke, supra, 39 Cal.App.4th 946, 46 Cal.Rptr.2d 266.
The suit in Neecke involved an attack on a Mill Valley ordinance claimed to be a special tax, and therefore requiring a two-thirds vote under California Constitution, article XVII A, section 4. Plaintiff prevailed in the trial court on his basic claim, but his motion for class certification was denied. Both sides appealed, and we held for the city, reversing the tax issue and affirming denial of class certification. Concluding that "class certification was prohibited," we began by distilling Neecke's contentions and our conclusion: "Neecke appeals from the portion of the trial court's order denying his motion to certify his action as a class action. The trial court denied the motion on the ground that the Supreme Court's recent decision in Woosley ... precluded class actions in tax refund cases unless specifically provided for by statute. Neecke contends that the trial court erred because (1) Woosley does not apply to local tax refund actions.... We conclude, however, that the trial court correctly applied Woosley to refuse to certify the class in this case." (Neecke, supra, 39 Cal.App.4th 946, 959, 46 Cal.Rptr.2d 266, fn. omitted.)
Following that, we addressed the issue "Does Woosley Bar Certification of the Class?" (Neecke, supra, 39 Cal.App.4th 946, 960, 46 Cal.Rptr.2d 266), in which we discussed the holding in Woosley (id. at pp. 960-961, 46 Cal.Rptr.2d 266), and then the premise of Neecke's claim, Revenue and Taxation Code sections 5097 and 5140 which, we noted, were "[i]f anything ... statutory provisions ... even more restrictive than the statutory provisions at issue in Woosley. Neither of these statutes provide for a class claim or suit such as the one Neecke attempted to certify." (Id. at p. 962, 46 Cal.Rptr.2d 266, italics added.) We then concluded the analyses, in language devastating to plaintiffs argument here: "Neecke therefore contends that Woosley does not apply to his case. He reasons that, since Woosley relied upon section 32 of article XIII of the state Constitution and since that provision had previously been held to apply to the state, but not to local governments, Woosley is inapplicable to refund actions against local municipalities. [¶] Neecke's argument, however, is belied by the Woosley decision itself. Nothing in the language of Woosley indicates an intent to limit that case's holding to claims statutes addressed to state, as opposed to local, taxes; indeed, that part of the court's opinion dealing with the class claim issue twice uses the term `governmental entities.' (Woosley, supra, 3 Cal.4th at pp. 788, 789, 13 Cal.Rptr.2d 30, 838 P.2d 758.) Also, and as previously noted, the Woosley court expressly overruled Schoderbek v. Carlson [ (1980) ] 113 Cal.App.3d 1029, 170 Cal.Rptr. 400, to the extent that it was inconsistent with Woosley. Relying upon City of San Jose, supra, 12 Cal.3d 447, 115 Cal.Rptr. 797, 525 P.2d 701, Schoderbek held, in the context of whether administrative remedies had been exhausted, that Revenue and Taxation Code sections 5097 and 5140 permit class claims and class actions for refunds of local property taxes. Thus, that case is not materially distinguishable from the case at hand. There was simply no reason for the Supreme Court to disapprove of Schoderbek unless the court intended its Woosley holding to apply to local, as well as state, taxes. We therefore must conclude that Woosley governs the case at hand." (Neecke, supra, 39 Cal.App.4th 946, 962-963, 46 Cal.Rptr.2d 266, fns. omitted.)
In sum, California has opted to allow class actions in tax refund cases only where specifically authorized by statute. *725 As a leading practical treatise puts it, Woosley and Neecke "preclude class actions in tax refund cases unless specifically allowed by statute." (Cohelan, On Cal. Class Actions (2006-2007 ed.) § 3:4, p. 30.)
It may be true, as plaintiff asserts, that Woosley does not "categorically" forbid class actions in tax refund cases. But it did in effect preclude refund class actions except where the antecedent administrative claim on behalf of the putative class is expressly authorized by statute. (See Woosley, supra, 3 Cal.4th 758, 788-792, 795, 13 Cal.Rptr.2d 30, 838 P.2d 758.) No such statute is present here. To the contrary.
The City has adopted an ordinance governing tax refunds. It is section 6.15-1 of the Business and Tax Regulations Code (Section 6.15-1) and provides in pertinent part: "(a) ... the Controller shall refund or cause to be refunded the amount of any tax, interest, or penalty that has been overpaid or paid more than once, or has been erroneously or illegally collected or received by the City, provided the person that paid such amount files with the Controller, within one year of payment of such amount ... a verified claim in writing .... [¶] (b) The claim shall be on a form furnished by the Controller. A claim may be returned to the person if it was not presented using the form. A refund claim may only be signed by the taxpayer or other person determined to be liable for the tax or said person's guardian or conservator. No other agent, including the taxpayer's attorney, may sign a refund claim. Class claims for refunds shall not be permitted...."[5]
Plaintiff argues that Woosley "is easily distinguishable because the tax refund claims in that case were not governed by the ... Claims Act," but by specific provisions in the Revenue and Taxation and Vehicle codes. Such argument ignores the interplay between sections 905 and 935 of the Claims Act. Although the Claims Act requires presentation of a claim for "money or damages" prior to commencing litigation, it excepts from that requirement "Claims under the Revenue and Taxation Code or other statute prescribing procedures for the refund, rebate, exemption, cancellation, amendment, modification or adjustment of any tax, assessment, fee or charge of any portion thereof, or of any penalties, costs or charges related thereto." (Gov.Code, § 905, subd. (a).) It also has a provision specifying that "Claims against a local public entity ... which are excepted by Section 905 ... and which are not governed by any other statutes or regulations expressly relating thereto, shall be governed by the procedure prescribed in any charter, ordinance or regulation adopted by the local public entity." (Gov.Code, § 935, subd. (a).) In short, those statutes allow a scope of operation for local statutes to occupy the field of local refund actions, if the locality so chooses. Here, the City has so chosen, a choice in full conformity with the Claims Act.
The same circularity defeats plaintiffs argument that Woosley does not categorically bar all refund actions being maintained as class actions. True enough, but again inapt. Woosley did hold that tax refund class actions are permitted if there is statutory authorization for an administrative *726 claim filed for the class. (Woosley, supra, 3 Cal.4th 758, 788, 792, 13 Cal. Rptr.2d 30, 838 P.2d 758.) With section 6.15-1, the City has expressly refused that authorization. Indeed, it has gone a step farther, explicitly prohibiting their use: "[c]lass claims for refunds shall not be permitted."
Although plaintiff expends great effort to demonstrate that the Claims Act does not apply, and thus there is no prelitigation claim requirement because she is not seeking the return of "money or damages" (Gov.Code, § 905)a point considered hereaftershe is attacking a chimera. As already shown, while the Claims Act does not itself require an administrative claim for tax refunds as a condition precedent to suit, it does allow local governmental entities to do so. (Gov.Code, § 935, subd. (a); see Pasadena Hotel Development Venture v. City of Pasadena (1981) 119 Cal.App.3d 412, 414-415, 174 Cal.Rptr. 52 & fn. 3 (Pasadena Hotel).) In short, the city ordinance defeats plaintiffs complaint to the extent it sought more than individual redress. (See Neecke, supra, 39 Cal.App.4th 946, 960-963, 46 Cal.Rptr.2d 266; Farrar, supra, 15 Cal.App.4th 10, 19, 20-21, 18 Cal.Rptr.2d 611.) Plaintiffs class action is not permitted.[6]

The Constructive Trust Cases Are Inapplicable
Plaintiff contends that her causes of action are framed in a manner that does not require compliance with either the principle requiring express authorization of the class action remedy or the rule that a plaintiff must complete the claims process prior to applying for relief in the courts. No, plaintiff argues, she is not seeking the refund of taxes so much as the return of a specific sum of money and thus principles governing imposition of a constructive trust are applicable. Again, plaintiff is wrong.
As previously established, the "pay first, litigate later" rule is firmly established in California. Originally a matter of constitutional prohibition protecting the state (Cal. Const, art. XIII, § 32), it has been extendedby this court among othersto units of local government. (Flying Dutchman, supra, 93 Cal.App.4th 1129, 1136-1138, 113 Cal.Rptr.2d 690; Writers Guild of America, West, Inc. v. City of Los Angeles, supra, 77 Cal.App.4th 475, 483, 91 Cal. Rptr.2d 603.) Artful pleading has not been allowed to carve out exceptions to the prohibition.
Unable to point to authority where the refund-only principle has not been applied in a situation where there is not threat of criminal penalty or process (see fn. 4, ante.), plaintiff instead cites a number of cases in claimed' support of the use of a constructive trust as an exception to the claim filing requirement of the Claims Act. All are distinguishable.
In Minsky v. City of Los Angeles (1974) 11 Cal.3d 113, 113 Cal.Rptr. 102, 520 P.2d 726 (Minsky), our Supreme Court held that the return of money illegally confiscated by arresting police officers could be sought without having first filed a prelitigation claim. "A claim for the specific *727 recovery of property has never been considered a claim for `money or damages' as used in [Government Code] section 905.... [¶] ... the government in effect occupies the position of a bailee when it seizes from an arrestee property that is not shown to be contraband. [Citation.] The arrestee retains his right to eventual specific recovery, whether he seeks to regain tangible property like an automobile, ring, wallet or camera, or whether he seeks to recover a specific sum of money which, under general constructive trust principles, is traceable to property within the possession of the defendant." (Id. at p. 121, 113 Cal.Rptr. 102, 520 P.2d 726; see Holt v. Kelly (1978) 20 Cal.3d 560, 565, 143 Cal.Rptr. 625, 574 P.2d 441 ["an arrestee who seeks in good faith to specifically recover property taken from him at the time of his arrest is exempt from the claim filing provisions of the Government Code, even though some or all of the property may have been dissipated and respondent may be compelled to respond in damages in lieu of property."].)
Minsky was cited in Gonzales v. State of California (1977) 68 Cal.App.3d 621, 137 Cal.Rptr. 681, where Division One of this District accepted, at the pleading stage, that a constructive trust could be imposed over the criminal fines collected by the State under an unconstitutional statute.
Bonelli v. State of California (1977) 71 Cal.App.3d 459, 139 Cal.Rptr. 486 involved pension benefits due to a former officeholder who fled the country following indictment for accepting more than $250,000 in bribes. The benefits were impounded by the Controller, who believed he was required to offset the retirement benefits against the amount of the bribes. The Controller also refused to release a $4,591 tax refund held by the Franchise Tax Board, and a $15,000 security deposit posted to contest a deficiency assessment that was later withdrawn. (Id. at pp. 462-63, 139 Cal.Rptr. 486.) The Court of Appeal affirmed that no offset could be assessed: "the security deposit and ... the tax refund, are the property of the Bonellis held in trust for them by the state, and therefore.... the controller violated the state's trusteeship obligations by withholding payment of these items.... [I]t follows, of course, that to the extent of Mr. Bonelli's contributions to his retirement fund, those sums have also remained the property of the Bonellis, held in trust by the retirement system." (Id. at p. 469, 139 Cal. Rptr. 486.)
Del Costello v. State of California (1982) 135 Cal.App.3d 887, 185 Cal.Rptr. 582 was similar to Bonelli. It, too, involved the Controller attempting an offset, this time offsetting against Ms. Del Costello's tax refund the amount she owed for AFDC (Aid to Families with Dependent Children Program) payments. The Court of Appeal first noted that "Bonelli does not answer the generic question, are all refunds held in trust?" (Id. at p. 893, 185 Cal.Rptr. 582.) Answering this question in the negative, the court summarized its holding: "Plaintiff argues that withheld taxes remain the property of the wage earner until the actual tax liability is determined. She claims that overpayment remaining after the tax liability is satisfied is held in trust by the state and offsetting this trust res against the state's claim violates the fiduciary obligations of the state, as trustee. We reject the claims. We hold that where, as here, the AFDC obligation has been reduced to a judgment it is an `amount due' the state and may be offset by the amount of any income tax refund owing the taxpayer." (Id. at p. 890, 185 Cal. Rptr. 582, fns. omitted.)
Minsky and Gonzales involved Minsky's and Gonzales's own money. So, too, did Bonelli, the government there attempting *728 to impose an offset against Bonelli's tax refund and his security deposit, money that was his. And, of course, Ms. Del Costello lost. None of the cases dealt with the issue here, a taxpayer seeking refund of an allegedly illegal tax. Indeed, plaintiffs opening brief admits as much, acknowledging that she must win: in her words, "the declaration of the illegality ... is the sine qua non for any refund; if there is no declaration of illegality, then there can be no refund." The constructive trust concept is not applicable here.[7]
Moreover, even if plaintiff were correct on this point, i.e., that the taxes at issue do not qualify as "money or damages" within the meaning of the Claims Act, and thus there was no claim requirement imposed, she would still have to deal with the unalterable fact that the City has its own statutory requirement which has a claim requirement, authorized by the Claims Act (Gov.Code, § 935, subd. (a), quoted ante). Put another way, even if plaintiff could avoid the state law claim requirement, she would still face the local requirement, which bans class actions in tax refund actions.[8]

The Refund Claims Are Not Incidental
Plaintiff next contends that her claim for refund "is merely incidental to other non-pecuniary claims" and, because she is not seeking "money or damages" within the scope of the Claims Act, no pre-litigation administrative claim was required. Plaintiff overestimates her preferred remedies, as her apparently primary claims are not claims at all.
A constructive trust is "not an independent cause of action but merely a type of remedy" (Glue-Fold, Inc. v. Slautterback Corp. (2000) 82 Cal.App.4th 1018, 1023, fn. 3, 98 Cal.Rptr.2d 661), and an equitable remedy at that. (Tri-Growth Centre City, Ltd. v. Silldorf, Burdman, Duignan & Eisenberg (1989) 216 Cal. App.3d 1139, 1154, 265 Cal.Rptr. 330.) The same is true of injunctive relief (Shell Oil Co. v. Richter (1942) 52 Cal.App.2d 164, 168, 125 P.2d 930; 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 778, p. 235), declaratory relief (id, § 806, p. 262), an accounting (id, § 775, p. 233), and the common count (Rotea v. Izuel (1939) 14 Cal.2d 605, 611, 95 P.2d 927; Moya v. Northrup (1970) 10 Cal.App.3d 276, 281, 88 Cal.Rptr. 783). Because there is an adequate remedy at law, no tool of equity can be used to subvert or evade that remedy. (Pacific Scene, Inc. v. Penasquitos, Inc. (1988) 46 Cal.3d 407, 414, 250 Cal.Rptr. 651, 758 P.2d 1182; 1 Pomeroy's Equity Jurisprudence (5th ed.1941) § 217, p. 367; 1 Story's Equity Jurisprudence (13th ed. 1886) p. 61 ["If the law commands or prohibits a thing to be done, equity cannot ... dispense with the obligation"].) This principle of deference operates in tax refund cases. (Farrar, supra, 15 Cal.App.4th 10, 17,18 Cal.Rptr.2d 611.)
Moreover, the class action is also "an invention of equity," notwithstanding *729 its "limited codification in Code of Civil Procedure section 382." (Farrar, supra, 15 Cal.App.4th 10, 17, 18 Cal.Rptr.2d 611.) It, too, is therefore subordinate to the statutory procedures governing administrative claims and judicial actions for refunds. (Neecke, supra, 39 Cal.App.4th 946, 963, 46 Cal.Rptr.2d 266; Kuykendall, supra, 22 Cal.App.4th 1194, 1204-1205, 27 Cal.Rptr.2d 783; Farrar, supra, at p. 17, 18 Cal.Rptr.2d 611.)[9]
Lastly, plaintiff argues that "[w]hile the Claims Act authorizes cities to adopt their own local pre-lawsuit claim procedure for certain types of claims, the Hotel Tax refund in this case is not such a claim." Plaintiff cites nothing in support of this argument, and the city responds by asserting that it is disposed by Pasadena Hotel Development Venture v. City of Pasadena, supra, 119 Cal.App.3d 412, 174 Cal.Rptr. 52, which, the City asserts, held that "Pasadena's municipal ordinance governing claims for refunds of local taxeswhich, like San Francisco's ordinance, did not conflict with the Government Code claim provisionswere authorized by Government Code sections 905 and 935 [subdivision] (a)." Plaintiffs reply seems to argue that Pasadena Hotel was wrongly decided, and in any event cannot be reconciled with Volkswagen Pacific, Inc. v. City of Los Angeles (1972) 7 Cal.3d 48, 101 Cal.Rptr. 869, 496 P.2d 1237 (Volkswagen Pacific). We disagree.
*730 Taking up the latter contention first, the language in Volkswagen Pacific on which plaintiff relies was dictum, as plaintiff herself expressly acknowledges.[10] Perhaps more importantly, that dictum cannot support plaintiff here, because if it meant what plaintiff claims it meant, the Supreme Court would have invalidated the Los Angeles ordinance, which it did not do. And most importantly, plaintiffs argument is belied by the many cases that have dealt with local ordinances in tax refund cases, illustrated perhaps best by Volkswagen Pacific itself, which enforced a Los Angeles municipal ordinance requiring pre-suit filing of a claim for refund of a local tax. (Volkswagen Pacific, supra, 7 Cal.3d 48, 60-63, 101 Cal.Rptr. 869, 496 P.2d 1237.) To the same effect are Howard Jarvis, supra, 79 Cal.App.4th 242, 249, 93 Cal. Rptr.2d 742, where the Court of Appeal relied on Los Angeles Municipal Code provisions governing tax refund claims; and Flying Dutchman, supra, 93 Cal.App.4th 1129, 1139, 113 Cal.Rptr.2d 690, where we held that the San Francisco Municipal Code provisions requiring pre-suit claims governed refund suits.

CONCLUSION
Fundamentally, we are dealing with the constitutional principle that "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid ... in such manner as may be provided by the Legislature." (Cal. Const., art. XIII, § 32.) Although this provision expressly applies to the state, we have accepted that its guiding principle is equally applicable to smaller units of government. (Flying Dutchman Park, supra, 93 Cal.App.4th 1129, 1136-1138, 113 Cal.Rptr.2d 690.) We have also held that section 6.15-1 constitutes an adequate legal remedy, satisfying due process, and thus supporting strict application of the "pay first, litigate later" principle. (Flying Dutchman, supra, at p. 1138, 113 Cal.Rptr.2d 690; see fn. 5, ante.) There is consequently no justification for not respectingand not strictly enforcingthe procedures adopted by the city to implement its policy decisions to limit legal redress to refund actions prosecuted by individual taxpayers who have already completed the administrative claim process. (See Neecke, supra, 39 Cal.App.4th 946, 961, 46 Cal.Rptr.2d 266; Farrar, supra, 15 Cal.App.4th 10, 18-19, 18 Cal. Rptr.2d 611.)
We summarize our conclusions: As required by due process, the city provides a judicial remedy to contest assessment or overpayment of a tax. As allowed by due process, the city limits that remedy to persons who have paid the tax and completed the administrative process to recover the tax. The City also limits the remedy to individuals, a point on which due process is silent, but which is authorized by state law. Plaintiff, as the trial court recognized, has cleared the hurdles to her personal action for a refund of Hotel Tax amounts she paid, but she must proceed on her own. Her situation is no different from other plaintiffs who were likewise unsuccessful in transmuting their refund suit into a class action: "[P]laintiffs are *731 properly in court and able to make that attack on their own behalf. But insofar as they are forced to go it alone, they are not hindered or aggrieved in that quest by the absence of a class behind them." (Farrar, supra, 15 Cal.App.4th 10, 21, 18 Cal. Rptr.2d 611.) Like the court in Kuykendall, we reject the idea that a taxpayer can "maintain a common law reimbursement action based on principles of restitution and constructive trust without complying with statutory conditions, specifically ... administrative claim requirements." (Kuykendall, supra, 22 Cal.App.4th 1194, 1204, 27 Cal.Rptr.2d 783.)
The order is affirmed.
We concur: HAERLE, Acting P.J., and LAMBDEN, J.
NOTES
[1] The City's tax on "transient occupancy of hotel rooms" is part of article 7 of the San Francisco Business and Tax Regulations Code. Originally adopted in 1961, it provides for a tax of 8 percent "on the rent for every occupancy of a guest room in a hotel in the City and County." (S.F. Bus. & Tax Regs. Code, § 502.) The definition of "guest room" has already been quoted in the text, ante. (Id., § 501, subd. (e).) Effective August 1, 1996, the City imposed a surcharge of an additional 6 percent. (Id., § 502.6-1, subd. (b).) The total tax of 14 percent is to be collected from the occupant/renter by the hotel operator, and transmitted to the city tax collector. (Id., §§ 503, 504.) The 8 percent base tax is allocated for a number of specified uses (id., § 515.01), and the 6 percent surcharge is to be deposited in the City's general fund. (Id., § 502.6-1, subd. (b).)
[2] "The Tax Collector may promulgate regulations and issue rules, determinations and interpretations consistent with the provisions of the Business and Tax Regulations Code as may be necessary or appropriate for the purpose of carrying out and enforcing the payment, collection and remittance of taxes. (S.F. Bus. & Tax Regs.Code, § 6.16-1.)
[3] Despite that the appeal is from an order sustaining the City's demurrer without leave to amend, and further despite that the order deals only with the portion of plaintiff's complaint that sought to expand the claim into a class action, it is well accepted that such so-called "death knell" orders in putative class actions are appealable. (See Daar v. Yellow Cab Co. (1967) 67 Cal.2d 695, 699, 63 Cal. Rptr. 724, 433 P.2d 732; Alch v. Superior Court (2004) 122 Cal.App.4th 339, 359-360, 19 Cal.Rptr.3d 29; Wilner v. Sunset Life Ins. Co. (2000) 78 Cal.App.4th 952, 957 & fn. 1, 93 Cal.Rptr.2d 413; Morrissey v. City and County of San Francisco (1977) 75 Cal.App.3d 903, 907, 142 Cal.Rptr. 527.)
[4] The exceptions deal primarily with situations where the taxpayer is facing criminal penalties or is forced to endure unwarranted criminal procedures. (See, e.g., Western Oil & Gas Assn. v. State Bd. of Equalization (1987) 44 Cal.3d 208, 213-214, 242 Cal.Rptr. 334, 745 P.2d 1360; Bueneman v. City of Santa Barbara (1937) 8 Cal.2d 405, 408, 65 P.2d 884; John Tennant Memorial Homes, Inc. v. City of Pacific Grove (1972) 27 Cal. App.3d 372, 378, 103 Cal.Rptr. 215.)
[5] In 2001, this court held that a predecessor version of this ordinance constituted an adequate remedy at law to satisfy due process for a taxpayer challenging the City's parking tax. (Flying Dutchman, supra, 93 Cal.App.4th 1129, 1138-1139, 113 Cal.Rptr.2d 690.) The current version of the ordinance and related administrative provisions of the City's Business and Tax Regulations Code were enacted in 2004. All of the salient features discussed in our earlier decision are also present in the current version of the ordinance.
[6] Finally on this issue, we note plaintiff does not mention in her brief the alternative basis identified in her complaint, i.e., to prosecute this action as a taxpayer representative pursuant to Code of Civil Procedure section 526a. Plaintiff's omission is perhaps not surprising, as this remedy is not available to a nonresident who is not working to assist in the collection of a tax (see Lundberg v. County of Alameda (1956) 46 Cal.2d 644, 647, 298 P.2d 1), let alone one attempting to lead a class action. (See Cohelan, On Cal. Class Actions, supra, § 3.4, p. 30 ["a taxpayer lawsuit undertaken as an alternative to a class action should not seek class eligibility for any refund."].)
[7] The four other cases string-cited by plaintiff without discussion are likewise distinguishable. Branciforte Heights, LLC v. City of Santa Cruz (2006) 138 Cal.App.4th 914, 42 Cal. Rptr.3d 96, involved a claim for return of plaintiff's own money paid under the Subdivision Map Act. (Gov.Code, § 66410 et seq.) And Harris v. State Personnel Bd. (1985) 170 Cal.App.3d 639, 216 Cal.Rptr. 274, County of Sacramento v. Lackner (1979) 97 Cal.App.3d 576, 159 Cal.Rptr. 1, and Forde v. Cory (1977) 66 Cal.App.3d 434, 135 Cal.Rptr. 903, all involved mandamus.
[8] Both the local claim requirement, and the ban on class claims, are embodied in section 6.15-1, which was quoted ante. We are puzzled as to how plaintiff can logically disclaim the applicability of section 6.15-1 while at the same time basing one of her causes of action directly upon it.
[9] This concluding reference to Neecke, supra, 39 Cal.App.4th 946, 46 Cal.Rptr.2d 266, the last of many references in this opinion, reminds us to comment on the observation in the City's brief criticizing the advocacy of plaintiff's counsel, specifically their failure to even mention four cases the city describes as "squarely on point with the issues in this appeal" and all of which "were discussed . . . in [the City's] briefs to the trial court." The four cases are Neecke, Howard Jarvis, Flying Dutchman, and Kuykendall. Whether the cases are "on point," as the City would have it, they clearly are pertinent to any meaningful discussion of the issue here, as shown by the fact that the cases are collectively mentioned over 15 times in this opinion. Especially is this true of Neecke, which is not only a decision of this very court, but which detailedly discussed and dissected Woosley. We believe the City's criticism is well taken.

The California Rules of Professional Conduct provide that in presenting a matter to a court "an attorney must employ, for the purpose of maintaining the causes confided to the attorney, only those means consistent with truth. (Rules of Professional Conduct, Rule 5-200(A).) . . . Thus, an attorney must not do any of the following: [1] Seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law. (Rules of Professional Conduct, Rule 5-200(B).) ..." (See, generally, 1 Witkin, Cal. Procedure, supra, Attorneys, § 521, p. 621.)
While Rule 5-200 is perhaps applicable only by interpretation, the Model Rules of Conduct, adopted by the American Bar Association, have a section that needs no interpretation. Rule 3.3, entitled, "Candor Toward the Tribunal," provides in pertinent part as follows: "A lawyer must not knowingly do the following: ... [11] ... [H] (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." (ABA Model Rules Prof. Conduct, rule 3.3(a)(2).)
"Although California has not adopted the Model Rules, courts and lawyers find the rules both helpful and persuasive in situations where the coverage of our Rules is unclear or inadequate." (1 Witkin, supra, Attorneys, § 418, p. 508.) We are one of those courts. (See generally Fortune, Underwood, Imwinkelried, Modern Litigation and Professional Responsibility Handbook (2001) § 8.5.1 pp. 329-330 ["The obligation to disclose adverse legal authority is an aspect of the lawyer's role as `officer of the court.' . . . lawyers should reveal cases and statutes of the controlling jurisdiction that the court needs to be aware of in order to intelligently rule on the matter. It is good ethics and good tactics to identify the adverse authorities, even though not directly adverse, and then argue why they are distinguishable or unsound. The court will appreciate the candor of the lawyer and will be more inclined to follow the lawyer's argument."].)
[10] The disputed sentence was "It would appear that if the Legislature intended to except tax refund actions, rather than just those arising under state law, it would have used `enactment' rather than `statute.'" (Volkswagen Pacific, supra, 7 Cal.3d 48, 62, 101 Cal.Rptr. 869, 496 P.2d 1237.) The court was considering the language of section 905, subdivision (a) of the Claims Act, and whether by using the word "statute" the Legislature encompassed only state tax provisions.