[No. B222603. Second Dist., Div. Eight. May 5, 2011.]

DON S. LEMMER, Plaintiff and Appellant, v.
JEFFREY CHARNEY et al., Defendants and Respondents.

## COUNSEL

Don S. Lemmer, in pro. per., for Plaintiff and Appellant.

Turner, Reynolds, Greco & O'Hara, Frederick E. Turner and Keith Van Dyke for Defendants and Respondents.

## OPINION

**GRIMES, J.**—This is an appeal from a judgment of dismissal after the trial court sustained a demurrer to the first amended complaint without leave to amend in an action by an attorney against a former client and his wife for fraud and intentional interference with prospective advantage. The gist of the action is that the attorney agreed to change the terms of his compensation from the payment of an hourly fee to a contingency fee in reliance on his client's fraudulent promise to take the case to trial or settlement, the wife conspired to defraud the attorney, and she also interfered with the attorney's prospective economic advantage by supporting her husband's decision to abandon his lawsuit. Finding public policy articulated in well-established California Supreme Court authority bars this action, we affirm the judgment.

## BACKGROUND

Plaintiff Don S. Lemmer, doing business as the Lemmer Law Firm, represented Jeffrey Charney (defendant) in a lawsuit against defendant's

former employer, Teleflora LLC. Defendant had been employed as Teleflora's executive vice-president and chief marketing officer in Los Angeles for about five months in 2004. Before filing suit, defendant signed an attorney-client fee agreement that provided defendant would pay plaintiff an hourly rate for legal services rendered in the employment dispute with Teleflora. Plaintiff then filed suit on behalf of defendant against Teleflora, its owners, and an affiliate for breach of contract, fraud and violations of the Labor Code. Teleflora cross-complained against defendant for breach of his employment contract, fraud and other causes of action. After several months, defendant asked plaintiff to make a new contingency fee agreement. The parties entered a new contingency fee agreement after defendant promised to take the case to trial or settlement to ensure plaintiff was paid for his legal representation.

However, defendant did not intend to take the case to trial if a settlement could not be reached, because he knew Teleflora's owner was extremely litigious and vindictive and would appeal any judgment in favor of defendant to drag out the litigation and exhaust defendant's resources. Defendant did not disclose his true intent to plaintiff, who relied on defendant's promise to proceed with the case to either settlement or trial. Plaintiff believed defendant had a strong likelihood of prevailing on his claims, for which plaintiff expected to recover contractual and statutory attorney fees and an additional contingency fee. If plaintiff had known defendant would not go to trial against Teleflora and its owners, plaintiff would not have agreed to the contingency fee arrangement.

Less than a month before trial, defendant and his wife called plaintiff. Defendant told plaintiff he was afraid to go to trial and instructed plaintiff to settle the case as soon as possible. Plaintiff objected and reminded defendant he had a strong case that should result in a judgment of several hundred thousand dollars for defendant, as well as attorney fees for plaintiff. Defendant's wife responded, "You are our attorney, and you will do what we tell you to do." Consequently, plaintiff initiated settlement discussions with counsel for Teleflora, who offered only a "walk away" settlement with each side receiving nothing and bearing their own fees and costs. Plaintiff conveyed this offer to defendant and his wife, who directed plaintiff to accept it. Plaintiff reminded defendant of his promise to ensure plaintiff was paid for his legal services. Defendant responded that he was "sorry about the financial hardship this is causing you and your family, but there is nothing I can do." Plaintiff settled the Teleflora lawsuit for a "walk away" agreement and dismissed the case. Defendant never paid plaintiff a reasonable attorney fee for services rendered in the Teleflora lawsuit.

Plaintiff sued defendant and his wife for conspiracy to defraud plaintiff by falsely promising to go to trial against the Teleflora defendants to induce plaintiff to enter the contingency fee agreement. Plaintiff also sued defendant's wife for interference with prospective economic advantage, claiming she induced defendant to end the Teleflora lawsuit and thereby interfered with plaintiff's prospective economic advantage from the attorney-client relationship he had with defendant. The trial court sustained the demurrer to the original complaint with leave to amend and thereafter sustained the demurrer to the first amended complaint without leave to amend.

## DISCUSSION

### 1. *Standard of Review*

"Because this case comes to us on a demurrer for failure to state a cause of action, we accept as true the well-pleaded allegations in plaintiffs' first amended complaint. ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]' " (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 [40 Cal.Rptr.3d 205, 129 P.3d 394].) We likewise accept facts that are reasonably implied or may be inferred from the complaint's express allegations. (*Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 633, fn. 3 [79 Cal.Rptr.3d 383].)

" ' "On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. [Citations.] When the trial court sustains a demurrer without leave to amend, we must also consider whether the complaint might state a cause of action if a defect could reasonably be cured by amendment. If the defect can be cured, then the judgment of dismissal must be reversed to allow the plaintiff an opportunity to do so. The plaintiff bears the burden of demonstrating a reasonable possibility to cure any defect by amendment. [Citations.]" ' " (*Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65, 71 [65 Cal.Rptr.3d 716].)

### 2. *First Cause of Action for Conspiracy to Commit Fraud*

Plaintiff acknowledges that a clause in a retainer agreement between an attorney and his client prohibiting the client from settling his lawsuit without

the consent of his attorney is void as against public policy. (*Hall v. Orloff* (1920) 49 Cal.App. 745 [194 P. 296].) Plaintiff contends this authority does not bar his claims because he did not try to control the settlement, but instead followed defendant's instructions to make a "walk away" settlement. He contends defendant has set up a "straw man argument" by claiming an attorney should not be allowed to threaten a client with a fraud lawsuit, because plaintiff never threatened defendant and fulfilled his ethical duty to settle as his client instructed.

However, there is no real difference between a promise not to settle without the attorney's consent and a promise, as alleged here, "to proceed with the case to either settlement or trial." Indeed, the former is the same as the latter, except the former is stated in the negative, and the latter in the affirmative. The practical effect of permitting plaintiff to sue his client for fraudulently inducing plaintiff to enter a contingency fee agreement with a false promise to take the case to trial or settlement is no different than permitting plaintiff to enforce an agreement not to abandon the lawsuit without the lawyer's consent. It makes no difference whether or not plaintiff threatened to sue defendant for fraud at any time before or after plaintiff negotiated the walk away settlement. If, after carrying out the client's instructions to abandon the case, a lawyer may sue the client for fraudulently inducing the contingency fee agreement, the client will be constrained to pursue a lawsuit he wants to abandon just as if the client had agreed at the outset not to settle without the attorney's consent.

In *Hall v. Orloff, supra,* 49 Cal.App. 745, the lawyer and client had agreed there would be no settlement without the mutual consent of the lawyer and client, and that if the client settled without the lawyer's consent, the client would pay the attorney half of the settlement proceeds or at least $1,000. The lawyer filed two lawsuits on behalf of the client, but the client dismissed them without receiving any consideration from the parties he sued. The client testified he became convinced the two lawsuits were without merit, there was no evidence to support any recovery, and therefore he dismissed the suits. (*Id.* at p. 749.) The Court of Appeal reasoned the contingency agreement did not create a duty on the part of the client to continue the lawsuits for the profit of the lawyer, because the lawsuits belonged to the client, not the attorney, and the client is free to drop the lawsuits at any time. " 'The law will not imply an agreement which would be illegal, if it were express. It will not, under the coercion of damages, constrain an unwilling suitor to keep a litigation alive for the profit of its officers. [Citations.] The notion that such a thing is possible betrays a strange misconception of the function of the legal

profession and of its duty to society. When the defendant[] abandoned the action, [he] became liable to the plaintiff for the value of the services then rendered. That is the measure of their liability and of his right.' " (*Hall v. Orloff, supra,* 49 Cal.App. at p. 749, quoting *Andrewes v. Haas* (1915) 214 N.Y. 255 [108 N.E. 423, 424].)

■ Here, just as the law will not enforce an agreement between the parties constraining a client to pursue an unwanted lawsuit, the law does not recognize a tort cause of action for damages for the client's decision to abandon it, because that would equally constrain defendant to keep his lawsuit alive just for his attorney's profit, despite his own fears and desire to abandon the case.

■ Plaintiff also may not sue his client's wife for her alleged conspiracy to defraud plaintiff. All those who conspire to commit a wrongful act are liable for the resulting damage, including those who agree to the plan and those who carry it out. (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 784 [157 Cal.Rptr. 392, 598 P.2d 45].) But we have found defendant was free to abandon the Teleflora lawsuit or settle it for a waiver of fees and costs, and since he committed no wrong, his wife is not liable for encouraging her husband's lawful acts.

3. *Second Cause of Action for Intentional Interference with Prospective Economic Advantage*

■ In *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393 [45 Cal.Rptr.2d 436, 902 P.2d 740], the Supreme Court held "a plaintiff seeking to recover for an alleged interference with prospective contractual or economic relations must plead and prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." Here, plaintiff alleges his client's wife wrongfully interfered with plaintiff's prospective economic advantage by telling plaintiff to walk away from the Teleflora lawsuit despite her conspiracy in her husband's fraudulent promise to take the case to trial or settlement. We have already held that defendant was free to abandon the Teleflora lawsuit or settle it for a waiver of fees and costs, and since he committed no actionable wrong, the same result applies to his wife; she cannot be found to have engaged in wrongful conduct by supporting her husband's decision to walk away from the Teleflora lawsuit.

## DISPOSITION

The judgment is affirmed. Respondents are to recover their costs on appeal.

Bigelow, P. J., and Flier, J., concurred.