Filed 11/10/14  Pena v. Navarro CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| RICHARD PENA et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> RAFAEL NAVARRO et al., <br><br> Defendants and Respondents. | B254023 <br><br> (Los Angeles County <br> Super. Ct. No. BC491269) |

APPEAL from an order of the Superior Court of Los Angeles County, Deidre H. Hill, Judge.  Affirmed.

Einstein & Spiegel and Gary R. Einstein, for Plaintiffs and Appellants, Richard Pena and Natalia Pena.

Law Offices of Andrew Ritholz and Andrew Ritholz, for Defendants and Respondents, Rafael Navarro and Florina Navarro.

_____

Richard Pena and Natalia Pena appeal from the dismissal of their lawsuit against Rafael Navarro and Florina Navarro following the trial court's order sustaining without leave to amend the Navarros' demurrer to the Penas' second amended complaint to quiet title and for partition, accounting and fraud. The Penas contend they adequately alleged a fiduciary relationship with the Navarros and, as a result, the court erroneously ruled their action to recover a 50 percent interest in an apartment building in Paramount was barred by the statute of frauds and the statute of limitations and their cause of action for fraud had not been properly pleaded. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Second Amended Complaint*

In their verified second amended complaint the Penas, who are married to each other, alleged that Rafael[1] and Florina are husband and wife, Florina and Natalia are sisters and "a close family, trust, confidential, and fiduciary relationship" existed among the four of them at all material times through August 2012—the month the original complaint was filed in the action. In December 1989 the Penas and the Navarros each contributed $140,000 to purchase an investment property (an apartment building) on South Paramount Boulevard. Title to the property was taken by Rafael Navarro and Florina Navarro, husband and wife, as joint tenants, as to an undivided one-half interest, and Richard Pena and Natalia Pena, husband and wife, as joint tenants, as to an undivided one-half interest. A copy of the grant deed was attached as Exhibit A to the pleading.

Following the purchase of the building, Richard and Rafael co-managed it. Initially, Rafael collected the rent and deposited the money into a joint checking account held by Richard and Rafael; Richard paid apartment-related bills from that account. Subsequently, a resident manager received the rent money, which Rafael then collected after ensuring all the tenants had paid. Although paragraph 17 of the second amended

---

[1] Because Richard Pena and Natalia Pena share a surname, as do Rafael Navarro and Florina Navarro, we refer to all four of the parties by their first names for clarity and convenience.

2

complaint alleged management of the property continued as described until approximately 2011, in paragraph 12 the Penas specifically alleged Richard paid the bills only through approximately 2001 and in paragraph 34 alleged they "were managing the subject property through on or about 2001." (Paragraph 12 of the first amended complaint similarly alleged the Penas continued the management and operation of the apartment building only "until approximately 2001.")

During 1993 and 1994 the Penas experienced severe financial problems. Fearing the Paramount apartment building might be seized by "creditors, including governmental agencies," it was agreed by all parties that the Penas would transfer their ownership interest to the Navarros, who would hold the property for all four owners to protect it from the Penas' creditors, and then return the 50 percent ownership interest to the Penas upon demand. According to the second amended complaint, "[a]s a result of the discussions, based upon the close family, confidential and fiduciary relationship, [the Penas] executed a quit claim deed transferring their interest, per their discussion to [the Navarros]. No monies or other consideration [was] transferred, other than Defendants' promise to re-deed as discussed above." The quit claim deed, attached as Exhibit B to the pleading, was recorded on February 17, 1994.

The Penas alleged they repaid their creditors in approximately 2004 or 2005. At that point they requested the Navarros return their 50 percent ownership interest and thereafter periodically made similar requests. Although the Navarros repeatedly reassured the Penas that the reconveyance would be made as promised, it was never done. Finally, in August 2012 Rafael told the Penas he would not sign a deed transferring the half interest in the apartment building unless the Penas borrowed money, secured by their residence, and purchased an income property in the names of both the Navarros and the Penas. According to the Penas, Rafael's statement was the first sign that the Navarros would not honor the agreement and trust the Penas had placed in them.

The second amended complaint sought to quiet title against the Navarros as to the Penas' 50 percent interest in the building and, to avoid a multiplicity of suits, requested

3

partition of the property in the event the court found in their favor on the quiet title cause of action. The Penas also sought an accounting of receipts and disbursements regarding ownership and operation of the apartment building from approximately 2001 forward. In their fourth cause of action the Penas asserted a cause of action for intentional fraud, contending the representations made by the Navarros in 1993 and 1994, as well as the renewed representations and promises from 2004 through spring 2012, regarding return of the 50 percent interest in the building to the Penas, were knowingly false. A fifth cause of action, not included in the first amended complaint, attempted to plead negligent misrepresentation; and the sixth and seventh causes of action, also not part of the first amended complaint, sought to impose a constructive or resulting trust.

2. *The Navarros' Demurrer and the Court's Order Sustaining the Demurrer Without Leave To Amend*

The Navarros demurred to the second amended complaint arguing the alleged oral agreement to transfer (or retransfer) a 50 percent interest in the Paramount apartment building was unenforceable under the statute of frauds (Civ. Code, § 1624, subd. (a)(3)) and the quiet title action was barred by the statute of limitations because the Penas were not seized or possessed of the property within five years of the commencement of the action (Code Civ. Proc., § 318), as well as by the doctrine of laches. The Navarros also asserted the Penas lacked standing to maintain a quiet title action because they claimed only an equitable interest in the property and held no legal title. These affirmative defenses, apparent from the face of the second amended complaint, were not avoided by the existence of a fiduciary relationship between the Penas and the Navarros, they insisted, because, apart from the fact Natalia and Florina are sisters, the Penas had failed to allege any factual basis from which the court could find a fiduciary relationship existed.

The accounting claim was also challenged as barred by the governing statute of limitations and laches, and the Navarros argued the intentional fraud cause of action was fatally defective because there were insufficient allegations of knowledge of falsity or intent to defraud. The remaining claims were attacked on similar grounds.

4

The trial court sustained the demurrer without leave to amend on the grounds advanced by the Navarros. The court agreed the Penas were seeking to enforce an oral agreement to transfer an interest in property and ruled they had failed to allege the Navarros, even if fiduciaries prior to the quitclaim deed in 1994, remained fiduciaries after that time. The court also found the quiet title action was barred by the statute of limitations and laches and the Penas lacked standing because they held no legal title to the property. As to the fraud claim the court ruled the allegations of the second amended complaint failed to show knowledge of any falsity or intent to defraud: "This cause of action is merely a re-cast of a breach of contract claim that, as discussed above, is barred." Finally, the court dismissed the negligent misrepresentation, constructive trust and resulting trust claims as improperly included in the second amended complaint. Those claims had not been included in the first amended complaint; and, when granting leave to amend after sustaining the demurrer to that pleading, the court had not granted the Penas permission to add new causes of action.

The court dismissed the action on November 26, 2013. The Penas filed a timely notice of appeal.

## DISCUSSION

### 1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Schifando*, at p. 1081.)

5

Although a general demurrer does not ordinarily reach affirmative defenses, it "will lie where the complaint 'has included allegations that *clearly* disclose some defense or bar to recovery.'" (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 183; accord, *Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 224.) "Thus, a demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense." (*Casterson*, at p. 183; accord, *Favila*, at p. 224; see *Coalition for Clean Air v. City of Visalia* (2012) 209 Cal.App.4th 408, 420 ["for a demurrer based on the statute of limitations to be sustained, the untimeliness of the lawsuit must clearly and affirmatively appear on the face of the complaint and matters judicially noticed"].)

2. *The Penas Failed To Plead the Existence of a Fiduciary Relationship with the Navarros During the Relevant Time Period*

The Penas concede, as they must, their quiet title and related real property causes of action are defective absent the existence of a fiduciary relationship between themselves and the Navarros.[2] As a general rule, the holder of equitable title cannot maintain a quiet title action against a legal owner. (See *G.R. Holcomb Estate Co. v. Burke* (1935) 4 Cal.2d 289, 297 ["[i]t has been repeatedly held in this state that an action to quiet title will not lie in favor of the holder of an equitable title as against the holder of a legal title"].) Moreover, under the statute of frauds contracts for the transfer of an interest in real property "are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed to by the party to be charged or by the party's agent." (Civ. Code, § 1624, subd. (a); see, e.g., *Alameda Belt Line v. City of Alameda* (2003) 113 Cal.App.4th 15, 20-21.) Without more, to the extent the Penas seek to enforce the purported 1994 oral promise by the Navarros to retransfer their original 50 percent

---

[2] For example, in their reply brief the Penas state, "Appellants submit that without the pleading of a fiduciary and/or confidential relationship between the Plaintiffs/Appellants on [the] one hand and the Defendants/Respondents on the other hand, the Defendants/Respondents' Demurrer would have been well taken."

interest in the Paramount apartment building on demand or to otherwise recover their half ownership of the property, those claims are barred.

In addition, Code of Civil Procedure section 318 provides, "No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the property in question, within five years before the commencement of the action." (See Code Civ. Proc., § 319 [cause of action concerning title to real property or to rents or profits from real property must be filed within five years of the time the person prosecuting the action or his or her predecessor was seized or possessed of the premises].) Because the Navarros have been the legal owners of the property since 1994 and exclusively managed it from at least approximately 2001, the Penas' property-related claims, filed in 2012 are, on their face, time barred.

Notwithstanding these procedural barriers to their lawsuit, the Penas contend equitable remedies, including a judgment quieting title, imposition of a constructive trust and an accounting, may nevertheless be obtained "'whenever they are required upon equitable considerations and are justified by the pleadings and proof.'" (*Dreher v. Rohrmoser* (1955) 134 Cal.App.2d 196, 198; accord, *Warren v. Merrill* (2006) 143 Cal.App.4th 96, 111-112 [judgment quieting title in condominium purchaser and imposing constructive trust were proper remedies in light of real estate agent's breach of fiduciary duty to purchaser arising from agent's fraudulent procurement of title to property].)[3] To that end, they attempted to plead the existence of a fiduciary relationship

_____

[3] In *Warren v. Merrill, supra*, 143 Cal.App.4th 96, we held, "Once fraud by a fiduciary is shown by the evidence (1) a written contract for a real property transaction is not required; (2) the absence of a written contract does not violate the statute of frauds; (3) the defrauded person may be found to hold superior title to that held by the defrauder; and (4) a wide variety of equitable remedies are available and appropriate to remedy the fiduciary's fraud." (*Id.* at p. 112.) Of course, even if the Penas' lawsuit had survived demurrer, any consideration of equitable remedies for the Navarros' alleged misconduct would necessarily include evaluation of the 1994 quitclaim transaction's apparent purpose to defraud creditors, including the state and federal government. (See, e.g.,

7

between them and the Navarros that would support their claims to quiet title and other equitable relief.  That effort did not succeed.

As this court explained in *Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 29, "A fiduciary relationship is '"any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party.  Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent."'"  Traditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers and agent/principal.  (*Id*. at p. 30; see *Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141, 1161 [the essential elements of a confidential relationship that gives rise to a fiduciary duty "have been distilled as follows:  '"1) the vulnerability of one party to the other which 2) results in the empowerment of the stronger party by the weaker which 3) empowerment has been solicited or accepted by the stronger party and 4) prevents the weaker party from effectively protecting itself"'"].)

As the Penas recognize, that Natalia and Florina are sisters is insufficient to establish a fiduciary or confidential relationship existed between them, let alone between the two brothers-in-law, Richard and Rafael, where one would not otherwise exist: "Consanguinity of itself does not create a fiduciary relationship."  (*Estate of Lingenfelter* (1952) 38 Cal.2d 571, 585; accord, *Bacon v. Soule* (1912) 19 Cal.App. 428, 435 [although confidential relationships are presumed to exist between husband and wife,

---

*Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Cal.4th 119, 138 ["courts will not ordinarily aid in enforcing an agreement that is either illegal or against public policy"]; accord, *Homami v. Iranzadi* (1989) 211 Cal.App.3d 1104, 1109-1110 [alleged oral agreement for payment of interest intended to avoid reporting income for state and federal income tax purposes not enforced].)

partners and parent and child, "[n]o such confidential relation, however, is presumed to exist between brother and sister merely because of their blood relationship"].)  Simply adding the conclusory labels "close" and "trusted" to the description of Natalia and Florina's sibling relationship, absent factual allegations showing the Navarros voluntarily accepted fiduciary obligations in connection with the couples' investment in the Paramount apartment building, does nothing to satisfy the pleading requirements for imposing such fiduciary duties on the Navarros.

To be sure, the business arrangements between the parties, including whatever oral agreement was purportedly made in 1994 in connection with the decision to quitclaim the Penas' interest in the apartment building to the Navarros, may well have required the Penas to rely upon the Navarros' alleged promise to retransfer the property at a later date. But, as we discussed in *Wolf v. Superior Court, supra*, 107 Cal.App.4th 25, "Every contract requires one party to repose an element of trust and confidence in the other to perform.  For this reason, every contract contains an implied covenant of good faith and fair dealing, obligating the contracting parties to refrain from "'doing anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . .'"  [Citations.]  'Being of universal prevalence, [the implied covenant] cannot create a fiduciary relationship; it affords basis for redress for breach of contract and that is all.'"  (*Wolf*, at p. 31; accord, *Rickel v. Schwinn Bicycle Co*. (1983) 144 Cal.App.3d 648, 654.)

Equally without merit is the Penas' contention their co-ownership of the Paramount apartment building with the Navarros until 1994 established an ongoing fiduciary relationship between the couples sufficient to overcome the procedural bars to their lawsuit.  (Cf. *Wilson v. S.L. Rey, Inc*. (1993) 17 Cal.App.4th 234, 242 ["[c]otenants stand in fiduciary relationship to each other"]; *Aaron v. Puccinelli* (1953) 121 Cal.App.2d 675, 677 [same].)  According to the second amended complaint Richard and Rafael continued to fully cooperate in the operation of the apartment building through 2001, including the sharing of profits.  The initial request to retransfer the property, however,

9

was not made until 2004 or 2005, a decade after the cotenancy had terminated and several years after any joint management of the investment had ceased.  At that point, as the trial court ruled, no fiduciary relationship existed between the two couples; and the equitable principles recognized by this court in *Warren v. Merrill, supra,* 143 Cal.App.4th 96 did not apply to any alleged misconduct by the Navarros.

3. *The Fraud Cause of Action Fails To Plead All Required Elements of the Tort with the Requisite Specificity*

As discussed, the trial court sustained the Navarros' demurrer to the intentional fraud cause of action on the ground the second amended complaint failed to plead knowledge of falsity or intent to defraud with the requisite specificity.  In their opening brief the Penas limit their defense of this cause of action to quoting the elements of the tort from *Lazar v. Superior Court* (1996) 12 Cal.4th 631 and asserting, "Appellants have pled the necessary elements for fraud and the sustaining of the Demurrer as [to that cause of action] was improper."  Their failure to address the specific pleading deficiencies identified by the trial court and to demonstrate the court's ruling was in error forfeits this claim on appeal.  (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"]; accord, *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["[t]he absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived]; see *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [appellate court's review limited to issues that have been adequately raised and supported in appellant's brief]; see also Cal. Rules of Court, rule 8.204(a)(1)(B) [appellate brief must "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority"].)

In any event, the Penas admit in their reply brief that without adequately pleading a fiduciary or confidential relationship their claim of intentional fraud, like their real property claims, is legally insufficient—without a fiduciary relationship "the reliance aspect in the fraud cause of action would not exist."  As we have explained, the second

10

amended complaint fails to sufficiently allege a fiduciary relationship existed with the Navarros at the relevant times. Accordingly, we affirm the order sustaining the demurrer as to this cause of action, as well.[4]

    4. *The Trial Court Properly Dismissed the New Causes of Action Pleaded Without Prior Court Approval*

When a demurrer is sustained by the trial court, "the court may grant leave to amend the pleading upon any terms as may be just . . . ." (Code Civ. Proc., § 472a, subd. (c).) Thus, a plaintiff who unsuccessfully opposes a demurrer may be granted leave at that time not only to attempt to correct deficiencies in the causes of action as to which the demurrer has been sustained but also to raise claims unrelated to those pleaded in the earlier complaint. But the plaintiff may amend only as authorized by the court's order. (*Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1023.) Absent an express statement of leave by the trial court to add entirely new causes of action, however, when a demurrer is sustained with leave to amend, that leave is properly construed as permission only to amend the causes of action as to which the demurrer was sustained (*People ex rel. Dept. Pub. Wks. v. Clausen* (1967) 248 Cal.App.2d 770, 785), to add new causes of action that respond directly to the trial court's reasons for sustaining the earlier demurrer (*Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1015), or to plead new legal theories based on the same operative facts alleged in the prior complaint. (See *McCall v. PacifiCare of Cal., Inc., supra*, 25 Cal.4th at p. 415 [issue on demurrer is whether facts alleged state a cause of action under any possible legal theory]; cf. *Davaloo v. State Farm Ins. Co.* (2005) 135 Cal.App.4th 409, 415-416 ["amended complaint relates back to a timely filed original complaint, and thus avoids the bar of the statute of

---

[4]     The third cause of action for an accounting falls with the Penas' other claims: An accounting itself is not an independent cause of action but rather a type of remedy that depends on the validity of the plaintiff's underlying claims. (*Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65, 82, disapproved on another ground in *McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 626; *Duggal v. G.E. Capital Communications Services, Inc.* (2000) 81 Cal.App.4th 81, 95.)

11

limitations, only if it rests on the same general set of facts and refers to the same 'offending instrumentalities,' accident and injuries as the original complaint"; amended complaint "alleging the same accident and injuries but a different cause of action and legal theory from the original complaint related back to the filing of the original complaint"].)

Although the Navarros did not move to strike the Penas' causes of action for negligent misrepresentation, constructive trust and resulting trust as entirely new claims not authorized by the trial court's order sustaining the demurrer to the first amended complaint with leave to amend, the court dismissed them on that basis "as improperly included in the operative pleading." Even without a formal motion before it, the court had the authority to strike improperly filed causes of action. (See *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 385 [although petitioner did not bring a motion to strike as an alternative to its demurrer, the court may on its own motion strike improper matter appearing on the face of the complaint].)

In their opening brief on appeal the Penas omit any reference to the trial court's ruling, simply arguing they had properly pleaded the necessary elements for causes of action for negligent misrepresentation, resulting and constructive trust. Even after the Navarros identified this failure in the respondents' brief, the Penas' reply brief once again fails entirely to address the actual ground for the trial court's dismissal order. As a result, any contention of error as to the fifth, sixth and seventh causes of action has been forfeited. (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal deemed forfeited or waived]; *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177-1178 ["[g]enerally, appellants forfeit or abandon contentions of error regarding the dismissal of a cause of action by failing to raise or address the contentions in their briefs on appeal"]; *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685 ["[c]ourts will ordinarily treat the appellant's failure to raise an issue in his or her opening brief as a waiver of that challenge"].)

12

## DISPOSITION

The order of dismissal is affirmed.  The Navarros are to recover their costs on appeal.


PERLUSS, P. J.

We concur:


WOODS, J.


ZELON, J.